No. 87-339

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

DONALD C. COLLINS,

       Plaintiff and Respondent,

  -vs-

STATE OF MONTANA, DEPARTMENT OF
JUSTICE, DIVISION OF HIGHWAY PATROL
and CLYDE LINDELL, Individually,

       Defendants and Appellants.

---

APPEAL FROM:  District Court of the Twentieth Judicial District
               In and For the County of Lake
               The Honorable James B. Wheelis, Judge Presiding

COUNSEL OF RECORD:

    For Appellant:

        Honorable Mike Greely, Attorney General, Helena, Montana
        Kimberly A. Kradolfer, Assistant Attorney General
        John H. Maynard, Helena, Montana

    For Respondent:

        James A. Manley; Manley, Smith & Dupuis, Polson, Montana

---

Submitted on Briefs:  March 18, 1988

Decided:  May 12, 1988

Filed: MAY 1 2 1988

*Ethel M. Harrison*
_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The State of Montana (the State) and Clyde Lindell (Officer Lindell) appeal an order of summary judgment made by the Lake County District Court in favor of Donald C. Collins (Collins). The District Court awarded partial summary judgment to Collins on the issues of the defendants' liability for assault and battery and violation of Collins' United States and Montana constitutional rights. We reverse and remand with instructions to enter summary judgment in defendants' favor.

On November 29, 1984, Officer Lindell of the Montana Highway Patrol observed a vehicle driven in an erratic manner near Pablo, Montana. Officer Lindell stopped the vehicle and found that Collins was the driver. Collins performed field sobriety tests for Officer Lindell and was subsequently arrested for driving under the influence of alcohol (DUI). Officer Lindell transported Collins to the Lake County Sheriff's Office for DUI processing.

Collins was read Montana's implied consent instructions at the sheriff's office and was asked to submit to a breath test. Collins refused to submit to the breath test. Officer Lindell then learned from a Lake County jailer that Collins was on probation for a January 17, 1984, DUI offense and that a condition of the probation was that Collins not consume alcoholic beverages. After an unsuccessful attempt to contact Collins' probation officer, Officer Lindell telephoned Lake County Attorney John Frederick (Frederick) to ask for advice.

Frederick, in his capacity as Lake County Attorney, was personally aware that Collins was under a one-year suspended sentence and probation for the January 17, 1984, DUI

2

conviction. Frederick had also been present at Collins' September 10, 1984, arraignment on another DUI charge and a charge of operating a motor vehicle while declared a habitual traffic offender. Frederick was aware that the conditions of Collins' release were that Collins not drink alcoholic beverages or drive an automobile. Frederick directed Officer Lindell to obtain a telephonic search warrant from Justice of the Peace Charles M. Meyers (Meyers) to authorize the extraction of a blood sample from Collins. Officer Lindell telephoned Meyers and explained the situation. Rather than grant a telephonic search warrant, Meyers elected to meet with Officer Lindell at the Lake County jail.

In the presence of Officer Lindell, Meyers telephoned Frederick from the Lake County jail and was again informed of the basis for the search warrant. Thereafter, Meyers issued a handwritten search warrant to "authorize any qualified medical person to withdraw a blood sample" from Collins. Collins was then transported to St. Joseph's hospital in Polson where a blood sample was withdrawn by a registered nurse.

Collins subsequently pled guilty to a DUI, third offense, operating a motor vehicle while declared a habitual traffic offender, and driving without liability insurance in connection with the November 29, 1984 arrest. Collins also pled guilty to the charges stemming from his September 1984 DUI arrest. At the date of this appeal, Collins had been convicted of five DUI offenses and numerous other related offenses including driving while his license was revoked. Collins was sentenced to four consecutive years with three and one-half years suspended as a result of the November and September 1984 incidents. Ninety days of his sentence were served in the Lake County jail and the other ninety days were spent at an alcohol treatment center in Wyoming.

Approximately nine days after his release from the alcohol treatment center, Collins again violated the terms of his probation by consuming alcohol in a bar.

On January 3, 1985, Collins filed this civil action against Officer Lindell in which he alleged assault and battery and violation of his constitutional rights. The State moved to intervene on the basis that Officer Lindell acted within the course and scope of his employment and that the State must indemnify him pursuant to § 2-9-305, MCA. The State's motion to intervene was granted on May 15, 1986.

On May 28, 1986, Officer Lindell and the State moved for partial summary judgment on the issue of liability. In its opinion and order of September 2, 1986, the District Court concluded that the blood sample was unauthorized, contrary to § 61-8-402(3), MCA, and was outside the course and scope of Officer Lindell's employment. The District Court granted summary judgment to Collins and Officer Lindell and the State appeal. Appellants Lindell and the State raise the following issues on appeal:

> 1. Did the District Court err when it concluded that Officer Lindell was acting outside the course and scope of his employment?
>
> 2. Is Officer Lindell entitled to summary judgment based on the undisputed facts of this case?
>
> 3. Is the State entitled to summary judgment based on the undisputed facts of this case?

Collins raises the following additional issue:

> 4. Did Officer Lindell and the State waive appellate review, and should this Court decline appellate review, because they entered into a stipulation for entry of judgment?

4

Before addressing the merits of this appeal, we must first dispose of Collins' issue regarding waiver of appellate review. Collins contends that appellants have somehow waived their right to appellate review by agreeing to an entry of judgment for nominal damages before first appealing the summary judgment. Collins does not cite any relevant legal authority and we find no merit to his argument.

The facts material to this appeal are not in dispute. Accordingly, we will review the District Court's legal analysis and are free to draw our own conclusions. Schneider v. Leaphart (Mont. 1987), 743 P.2d 613, 616, 44 St.Rep. 1699, 1703. In its opinion and order, the District Court first concluded that Officer Lindell acted outside the course and scope of his employment when he sought a blood sample after Collins refused to submit to a breath test. The District Court's conclusion in this regard was based on § 61-8-402(3), MCA, which provides as follows in pertinent part:

> If a resident driver under arrest refuses upon request of a peace officer to submit to a chemical test designated by the arresting officer as provided in subsection (1) of this section, none shall be given . . .

The District Court reasoned that Officer Lindell was no longer acting within the course and scope of his employment when he persisted in procuring a blood sample from Collins. In their first issue, appellants contend that the District Court erred when it concluded that Officer Lindell acted outside the course and scope of his employment.

Appellants' rely on this Court's decision in State v. Thompson (1984), 207 Mont. 433, 674 P.2d 1094, for the proposition that, in an arrest for DUI, a refusal to submit to a chemical test pursuant to § 61-8-402, MCA, does not always preclude the seizure of a blood sample. In Thompson

5

this Court held that the implied consent statute, § 61-8-402, MCA, does not apply to negligent homicide prosecutions. The defendant, Thompson, was involved in an automobile accident and was arrested for DUI. A Montana Highway Patrol (MHP) officer requested that Thompson submit to a blood test. Thompson refused to submit to the test. The MHP officer later learned from the Missoula County Attorney's office that a woman had died from injuries sustained in the automobile accident and that Thompson was now suspected of negligent homicide. A blood sample was subsequently taken over Thompson's objection and was used to convict him of negligent homicide. Thompson appealed to this Court and contended that the evidence of his blood alcohol content was drawn against his will in violation of the implied consent law. We reviewed the legislative intent of § 61-8-402, MCA, and concluded that application of the implied consent law to negligent homicide cases to preclude chemical tests was not within the intent of the legislature. Thompson, 674 P.2d at 1096-97. We reach a similar conclusion in this case.

Section 61-8-402, MCA, does not apply to the facts of this case to preclude the taking of a blood sample pursuant to a search warrant. It is clear that Officer Lindell acted as he did in this case in order to preserve evidence relative to Collins' violation of the terms of his probation and other non-DUI offenses. That such conduct in this case is within the course and scope of Officer Lindell's employment cannot be questioned. Accordingly, we hold that the District Court erred when it determined that Officer Lindell acted outside the course and scope of his employment.

Appellants concede that evidence of blood alcohol content obtained through the use of a blood sample taken over a defendant's objection would not be properly admissible in most DUI prosecutions. In this case, Collins pled guilty to

6

the DUI charge thereby negating any issue of the admissibility of evidence of his blood alcohol content. Where, as is the case here, law enforcement authorities have probable cause to believe that an offense other than the underlying DUI has occurred for which a blood test is required to preserve evidence, a blood sample may be taken pursuant to a search warrant. In Thompson, law enforcement officials were aware that an individual died from injuries sustained in the automobile accident. Consequently, there was probable cause to believe that Thompson had committed negligent homicide. In Thompson, the possible negligent homicide charge provided the basis for a blood test. Similarly, Collins' violation of the terms of his probation provided the basis for the blood test in this case. Obviously, not all non-DUI offenses can be used to justify a blood sample taken without consent. For example, a violation of Montana's mandatory seat belt law coupled with a DUI would not normally justify the taking of a blood sample without consent.

In their second and third issues, appellants contend that because Officer Lindell's actions were in the course and scope of his employment, he and the State are entitled to immunity under several legal theories. However, the immunity arguments need not be addressed because there are no genuine issues of material fact suggesting that Officer Lindell committed an assault and battery or an unauthorized invasion of Collins' privacy.

Collins contends that it does not matter whether Officer Lindell's actions were in the course and scope of his employment because Lindell's actions were unauthorized and contrary to § 61-8-402, MCA. The taking of a blood sample over his objection, Collins argues, was both an assault and battery and an invasion of his privacy rights. However, as

7

noted above in our discussion of _Thompson_, § 61-8-402, MCA, does not apply to proscribe the taking of a blood sample in this case. Moreover, Officer Lindell's actions were authorized by the Montana statutes regarding search warrants.

Section 46-5-203, MCA, provides in pertinent part as follows:

> A search warrant may authorize the seizure of the following:
>
> . . .
>
> (2) any instruments, articles, or things which . . . may constitute evidence of any offense;
>
> . . .

In addition, § 46-5-208, MCA, provides that "[a]ll necessary and reasonable force may be used to execute a search warrant . . ." Collins contends that the search warrant in this case was illegal for two reasons. First, Collins reiterates his position that a blood sample could not be taken without his consent. Again, his position in this regard is without merit under the circumstances of this case. Second, Collins points out that Officer Lindell and Justice of the Peace Meyers did not follow the statutory procedures for telephonic search warrants as set forth in § 46-5-202, MCA. These procedural defects, Collins contends, render the search warrant void _ab initio_. Appellants concede that the proper procedures were not followed, but argue that the search warrant is valid on its face and is merely voidable, not void.

We agree with the appellants. The procedural defects in obtaining the search warrant do not render it void in this case. Although the application for this particular search warrant was neither entirely written nor entirely telephonic as described in § 46-5-202, MCA, sufficient grounds for

8

issuance of the search warrant were communicated to Justice of the Peace Meyers. Furthermore, Collins does not contend that Meyers was without jurisdiction to issue the search warrant. While Collins does allege that the search warrant is irregular on its face, he does not support this allegation with any genuine issues of material fact.

Appellants claim the search warrant sufficiently complies with § 46-5-201, MCA, to be valid on its face. We agree. As pointed out by the appellants, a "[m]inisterial officer is justified in the execution of and must execute all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued." Harri v. Issac (1940), 111 Mont. 152, 157, 107 P.2d 137, 140. In this case, Officer Lindell was justified, authorized, and was in fact compelled to obey the search warrant and direct the registered nurse to take Collins' blood sample.

Collins is also incorrect in his position that Officer Lindell's actions constituted an assault and battery. The rules regarding assault and battery are summarized as follows by the Restatement (Second) of Torts (1965), § 13 and § 21 respectively:

> § 13. Battery: Harmful Contact
>
> An actor is subject to liability to another for battery if
>
> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
>
> (b) a harmful contact with the person of the other directly or indirectly results.
>
> § 21. Assault

9

> (1) An actor is subject to liability to another for assault if
>
> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
>
> (c) the other is thereby put in such imminent apprehension.

Collins submits "that there is no question that causing another person's body to bleed is a harmful or offensive physical contact." However, even if the taking of a blood sample constituted an assault and battery, which it does not in this case, such action by Officer Lindell is privileged under the circumstances presented. Collins overlooks § 145 of the Restatement (Second) of Torts (1965) which provides that "[o]ne serving a process or executing an order of a court or other public authority is privileged, if such order is valid or fair on its face, to use such force against the person of another . . . as is authorized by the order or is reasonably necessary for the service of the process or the execution of the order." See also § 46-5-208, MCA, (all reasonable and necessary force may be used to execute a search warrant.) The search warrant in question was valid on its face and particularly authorized that a blood sample be taken from Collins. Had there been a "harmful" or "offensive" contact, such contact would have been privileged in this instance.

We do not believe that the taking of a blood sample by trained medical personnel is either harmful or offensive given the present state of medical technology and blood testing techniques. Millions of Americans submit to blood sampling every day without ill effect. Collins testified that he experienced no pain from having the blood sample

10

taken and testified only that he was embarrassed that the blood sample had to be taken over his objection. Collins' embarrassment is insufficient to support his assault and battery claim.

The United States Supreme Court reached a similar conclusion eleven years ago in the context of a constitutional due process argument. In Breithaupt v. Abram (1957), 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, Breithaupt was involved in an automobile accident in which three persons were killed. Breithaupt was unconscious at the hospital when a New Mexico State Patrolman asked that a blood sample be taken. The chemical analysis of the blood sample was later used as evidence to convict Breithaupt of involuntary manslaughter.

On appeal to the United States Supreme Court, Breithaupt argued that his conviction, based on the chemical analysis of a blood sample taken without his consent, violated his due process rights under the Fourteenth Amendment to the United States Constitution. Breithaupt relied on Rochin v. California (1952), 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, to assert that an involuntary blood test is similar to the forced stomach pump present in Rochin in that both acts "shock the conscience" and are so "brutal" and "offensive" as to be violative of a person's due process rights. Briethaupt, 352 U.S. at 435. The United States Supreme Court disagreed with Breithaupt and stated the following:

> [T]here is nothing "brutal" or "offensive" in the taking of a sample of blood when done, as in this case, under the protective eye of a physician.
>
> . . .
>
> [A] blood test taken by a skilled technician is not such "conduct that shocks the conscience," . . . nor such a

11

method of obtaining evidence that it offends a "sense of justice," . . .

. . .

The test upheld here is not attacked on the ground of any basic deficiency or of injudicious application, but admittedly is a scientifically accurate method of detecting alcoholic content in the blood, thus furnishing an exact measure upon which to base a decision as to intoxication. Modern community living requires modern scientific methods of crime detection lest the public go unprotected. The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield

. . .

[S]ince our criminal law is to no small extent justified by the assumption of deterrence, the individual's right to immunity for such invasion of the body as is involved in a properly safeguarded blood test is far outweighed by the value of its deterrent effect due to public realization that the issue of driving while under the influence of alcohol can often by this method be taken out of the confusion of conflicting contentions. (Citations omitted.)

352 U.S. at 436-37, 439-40 (cited with approval in State v. Haley (1957), 132 Mont. 366, 373-375, 318 P.2d 1084, 1087-88.) The reasoning and conclusion of Breithaupt as approved in Haley are persuasive in our determination that the blood test does not constitute an assault and battery under the particular circumstances of the case now before us.

Collins also contends that the blood test violated his right to privacy and cites to Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, for support. In Schmerber, a blood sample was taken from an injured motorist

12

(Schmerber) by a physician at the direction of a California police officer. The chemical analysis of the blood sample was subsequently admitted as evidence in Schmerber's DUI trial. Schmerber was convicted and his conviction was upheld by a California appellate court. Schmerber appealed to the United States Supreme Court and contended that the blood test violated his right not to be subjected to unreasonable searches and seizures. In its opinion, the United States Supreme Court recognized that the taking of blood samples by law enforcement officials without consent would, in limited circumstances, be prohibited by the personal privacy guarantees of the Fourth Amendment to the United States Constitution. However, Schmerber also specifically notes that the "Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions not justified in the circumstances, or which are made in an improper manner." Schmerber, 384 U.S. at 768. The Schmerber Court went on to conclude that the taking of a blood sample without a search warrant was "an appropriate incident to [Schmerber's DUI] arrest." 384 U.S. at 771. Schmerber does not support Collins' privacy argument because the blood sample in this case was justified in the circumstances and was taken in a proper manner.

Collins again premises his invasion of privacy argument on the mistaken belief that the blood test was unauthorized and contrary to § 61-8-402, MCA. Collins also fails to make any significant invasion of privacy argument in his appellate brief. Possibly for that reason, appellants fail to address the privacy issue altogether. Though there has been no invasion of Collins' privacy, we believe the privacy issue to be significant enough in terms of the public policy impact of this case as to merit at least a cursory analysis regardless of the parties' failure to address the issue.

Montanans have mandated that "[t]he right of individual privacy is essential to the well-being of a free society and shall not be infringed without a showing of a compelling state interest." Mont.Const. art.II, § 10. This Court will continue to closely review cases such as the one now before us for evidence that this right of privacy has been infringed. That the State of Montana has a compelling interest in protecting its citizens from the ever-increasing threat of drunk drivers cannot be disputed. However, this appeal does not present us with a DUI case and the removal of drunk drivers from our highways is not the compelling state interest involved. Mr. Collins has been duly convicted and sentenced for his repeated violations of Montana's DUI laws. We can only hope that Collins, and others like him, will cease to be a threat to our safety on and off the highway.

The particular compelling state interest served here is Montana's enforcement of its criminal laws, other than DUI in this case, where such enforcement is for the protection and benefit of Montanans' other fundamental rights. State ex rel. Zander v. District Court (1979), 180 Mont. 548, 556, 591 P.2d 656, 660. As we have previously noted, the blood test in this instance would not have been authorized without Collins' consent had this been solely a DUI case. Section 61-8-402, MCA. In the instance of a non-DUI offense, an involuntary blood test supported by a search warrant issued with sufficient probable cause serves to protect the State's interest in enforcing its criminal laws and, as such, is not a violation of a person's right to privacy under the Montana Constitution. However, law enforcement officials should be cautioned that, given the proper circumstances, we will not hesitate to hold that a blood test taken without probable cause or exigent circumstances is unreasonable and an invasion of a person's right to individual privacy. In

14

addition, our holding today must not be interpreted by law enforcement officials to authorize carte blanche blood sampling of Montanans.

For all the foregoing reasons, we hold that the District Court erred in granting summary judgment to Collins and we reverse and remand with instructions to enter summary judgment in favor of Officer Lindell and the State of Montana.

Reversed and remanded with instructions.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices