JUSTICE SANDEFUR,
specially concurring.
¶29 I concur that the City’s application for a DUI search warrant stated sufficient probable cause to believe that Williams was driving under the influence of alcohol in violation of § 61-8-401, MCA, and that he waived his assertion of error regarding the implied consent advisory requirement by failing to raise it in Municipal Court. Thus, I concur that the Municipal Court did not err in denying Williams’ motion to suppress the blood alcohol content (BAC) evidence obtained by the Missoula Police pursuant to a post-refusal DUI search warrant. *314 However, I disagree that the validity of the Municipal Court’s search warrant depends on compliance with § 61-8-402(5), MCA, and that the warrant application complied with the similarity requirement of § 61-8-402(5), MCA. Rather than attempt to shoehorn the warrant into § 61-8-402(5), MCA, I instead would affirm on the alternative basis that, regardless of whether Williams’ prior Arizona DUI conviction occurred under a legal standard of liability similar to §§ 61-8-401 and -406, MCA, the Municipal Court lawfully issued the search warrant on probable cause of DUI as independently authorized by § 46-5-221, MCA (general authorization for issuance of search warrants on probable cause of criminal activity).
¶30 Standing impassably in the path of affirming the Municipal Court’s search warrant under § 61-8-402(5), MCA, is the express statutory requirement that Williams must have had a prior Arizona DUI conviction under a legal standard of liability “similar” to §§ 61-8-401 and -406, MCA (Montana DUI and DUI perse). See § 61-8-402(5), MCA. Unlike the Colorado statutes at issue in McNally, which had three different classes of DUI offenses,[1] Montana and Arizona have only two base DUI offenses—DUI and DUI per se. See §§ 61-8-401(1)(a), (3), and -406(1)(a), MCA; Ariz. Rev. Stat. § 28-1381(A)(1) and (2). While Arizona and Montana similarly define DUI per se, see § 61-8-406(1)(a), MCA (driving or being in actual physical control of a noncommercial vehicle with BAC of 0.08 or more), and Ariz. Rev. Stat. § 28-1381(A)(2) (driving or being in actual physical control of a vehicle with an “alcohol concentration of 0.08 or more”), Arizona defines alcohol-based DUI more broadly than § 61-8-401(1)(a) and (3), MCA (driving or being in actual physical control of a vehicle when person’s “ability to safely operate a vehicle has been diminished” by alcohol intake). Compare Ariz. Rev. Stat. § 28-1381(A)(1) (driving or being “in actual physical control of a vehicle ... [wjhile under the influence of an intoxicating liquor ... if the person is impaired to the slightest degree”). See also State v. Miller, 245 P.3d 454, ¶ 7 (Ariz. App. 2011) (construing Arizona DUI definition). The Arizona “impaired to the slightest degree” standard requires proof of a lesser degree of impairment than § 61-8-401, MCA (diminished “ability to safely operate a vehicle”). A person who commits the offense of DUI under Arizona law does not necessarily commit the offense of DUI under § 61-8-401, MCA. Consequently, the State inaccurately represented in *315 the search warrant application that Williams had a prior DUI conviction under a standard of criminal liability “similar” to §§ 61-8-401 and -406, MCA.
¶31 As recognized by the Court, the mechanism for judicial review of the sufficiency of a search warrant application is our constitutionally-mandated Worrall standard of review requiring excise of inaccurate or misleading factual statements set forth in the original search warrant application and then reassessment of whether what remains is sufficient to establish probable cause for issuance of the warrant. Worrall, ¶¶ 32-33 (adopting Montana constitutional standard more stringent than federal Franks standard). If what remains in original application is not sufficient to establish the necessary probable cause, the reviewing court must void the warrant and suppress the fruits of the search. Worrall, ¶¶ 32-33.
¶32 If, as the Court implies, the validity of the Municipal Court’s search warrant depends on § 61-8-402(5), MCA, I would extend and similarly apply our Worrall standard not only to the constitutionally-required probable cause review of search warrant applications but also to review of the accuracy of the statutorily-required assertion in a search warrant application under § 61-8-402(5), MCA, that the suspect had a prior DUI conviction under a standard of criminal liability similar to §§ 61-8-401 and -406, MCA. Under Worrall, lower court findings of fact would continue to be subject to a clearly erroneous standard of review, but the related question arising under § 61-8-402(5), MCA, of whether a statute from another jurisdiction imposes a standard of criminal liability “similar” to §§ 61-8-401 and -406, MCA, would be a pure question of law necessarily subject to de novo review for correctness. Here, straightforward application of our Worrall standard would result in the unavoidable conclusion that the search warrant application inaccurately represented that Williams had a prior Arizona DUI conviction under a standard of legal liability similar to §§ 61-8-401 and -406, MCA. The required excision of that inaccurate information would then require invalidation of the warrant and suppression of the resulting BAC evidence due to non-compliance with the express similarity requirement of § 61-8-402(5), MCA.
¶33 The Court’s analysis avoids application of our Worrall standard, and with it any meaningful review of the State’s compliance with § 61-8-402(5), MCA. The Court correctly begins with the proposition that judicial review of the sufficiency of a search warrant application is limited to review of the information within the four corners of the application. But the analysis goes awry when it asserts that application of our Worrall standard to the similarity requirement of *316 § 61-8-402(5), MCA, would improperly call for a conclusion of law dependent on extrinsic legal analysis beyond the four corners of the search warrant application. The Court’s reasoning overlooks the fact that Worrall allows, if not necessarily requires, consideration of extrinsic information as a basis to assess the truth and accuracy of the information set forth within the four corners of the application. Regardless of whether the predicate information involves a matter of fact or matter of law, the critical focus of our Worrall standard of review is whether the predicate information alleged by the State as the legal justification for issuance of a search warrant is true and accurate. The purported “impractical or impossible” time-consuming “burden on police officers and issuing judges,” of verifying the accuracy of a sworn representation in a search warrant application, has no bearing whatsoever on the critical question of whether the court issued the warrant based on accurate information required by law.
¶34 Neither the obvious public policy importance of effective DUI investigation and prosecution, nor the practical inconvenience of requiring law enforcement to comply with a legal requirement imposed by the Legislature, have any proper place in the construction of the clear and unambiguous similarity requirement of § 61-8-402(5), MCA. If, as the Court implies, the validity of DUI-related search warrants necessarily depends on compliance with § 61-8-402(5), MCA, the sky will not fall and cripple DUI investigations if the State has to provide accurate information to comply with the statutory similarity requirement. Montana law enforcement officers have, or should have, 24/7 legal support from state and local prosecutors as needed. As Montana’s chief law enforcement officer, the Attorney General certainly has the resources and expertise to support law enforcement and local prosecutors by surveying and publishing the various comparative standards of DUI-related liability in other jurisdictions. Finally, any law enforcement problem caused by compliance with § 61-8-402(5), MCA, is the sole responsibility of the Legislature, not this Court. Accordingly, I respectfully disagree with the Court’s stated rationale for upholding the validity of the search warrant in this case.
¶35 Proper resolution of this case merely requires recognition of the independent availability of unrestricted DUI-related search warrants under § 46-5-221, MCA. Prior to 2011, Montana law did not specifically provide for DUI-related search warrants. The two primary legal means available to law enforcement to obtain DUI-related BAC evidence were:
(1) voluntary consent of the person to the implied consent request of a law enforcement officer for a preliminary breath test in the field on reasonable suspicion of a DUI-related offense, § 61-8- *317 409(4), MCA, and/or a more precise breath or blood test following the person’s arrest on probable cause of a DUI-related offense, § 61-8-402(4), MCA; and
(2) involuntary seizure and scientific analysis (search) of a person’s blood upon a search warrant issued pursuant to § 46-5-221, MCA, on probable cause of criminal activity, whether DUI or non-DUI-related, and the presence of particularly described related evidence or contraband at or in a particularly described location.
As to the latter, unrestricted search warrants have always been available to law enforcement “on probable cause to believe that an offense has been committed” and that “evidence ... connected with the offense may be found.” Section 46-5-221, MCA (emphasis added).[2] As defined by §§ 61-8-401 and -406, MCA, DUI and DUI per se are “offenses” as referenced in § 46-5-221, MCA. See § 46-1-202(15), MCA (definition of “offense”). Even before the 2011 Legislature expressly clarified the matter in § 46-5-224(1), MCA (specifically including detectable BAC in preexisting authorization for seizure of “evidence” by warrant), measurable BAC has always been “evidence connected with” DUI-related offenses for purposes of § 46-5-221, MCA. See §§ 26-1-101(2), 46-5-224(1), and 61-8-404(1)(a), MCA. Fifty years ago, the 1967 Legislature broadly crafted § 46-5-224, MCA, to “set out as expansively as possible the items which may be seized under a search warrant.” State v. Quigg, 155 Mont. 119, 129, 467 P.2d 692, 697-98 (1970) (quoting Criminal Law Commission Comments) (emphasis added); 1967 Mont. Laws 372.
¶36 In various forms since original enactment in 1971, Montana’s primary implied consent statute has allowed DUI suspects to refuse to submit to warrantless implied consent BAC tests subject only to temporary loss of driving privileges upon refusal. See § 61-8-402(4), MCA. From 1971 through 1995, § 61-8-402, MCA[3] provided that, if an arrested person “refuses ... to submit” to a warrantless implied consent test, “none shall be given.” Section 61-8-402(3), MCA (1995); 1971 *318 Mont. Laws 640. From 1997 to date, § 61-8-402, MCA, has similarly provided that, if a person “refuses ... to submit” to a warrantless implied consent test, “ the refused test ... may not be given.” Section 61-8-402(4), MCA; 1997 Mont. Laws 492.[4] This clear and unequivocally plain limiting language in Montana’s implied consent statutes has always applied only to the warrantless post-refusal BAC tests authorized by the statutes. The plain language of Montana’s implied consent statutes has never barred or otherwise limited warrant-authorized seizures and searches of DUI-related blood samples under the independent authority of § 46-5-221, MCA.
¶37 Nonetheless, despite clear and unequivocal statutory language to the contrary, widespread misconception has long existed that the limiting language of §§ 61-8-402(4) and -409(4), MCA, not only barred warrantless post-refusal DUI-related seizures of BAC evidence but also warrant-authorized DUI-related seizures.[5] The long-standing misconception stems from a too cursory and undiscerning analysis of our decision in Collins v. Montana Dept. of Justice, 232 Mont. 73, 755 P.2d 1373 (1988). In the anomalous context of a civil assault and battery action against an investigating Montana Highway Patrol officer and the State, we considered whether the limiting language § 61-8-402(3), MCA (1983), barred post-refusal, warrant-authorized blood seizures as the lynchpin for determining whether the officer and the State had qualified immunity from the plaintiff s civil assault and battery claims. Collins, 232 Mont. at 77-78, 755 P.2d at 1375-76. Whether the limiting language in § 61-8-402(3), MCA (1983), barred post-refusal, warrant-authorized, DUI-related seizure of BAC evidence was not squarely at issue. Rather, based on the State’s concession, we assumed, without analysis, that § 61-8-402(3), MCA (1983), barred post-refusal DUI-related search warrants. Based on that uncontested assumption, we merely held that the district court erroneously denied qualified immunity to the officer and State because the limiting language in the implied consent statute in any event did not bar warrant-authorized post-refusal blood seizures based on non-DUI- *319 related offenses. Collins, 232 Mont. at 77-78, 755 P.2d at 1375-76.[6] In 2014, we perpetuated the misconception by cursorily stating, without analysis, that the limiting language in the pre-2011 implied consent statute “did not permit law enforcement to apply for a search warrant in DUI cases if an arrested person refused to submit to BAC testing.” Giacomini, ¶¶ 10-11 (citing Collins, 232 Mont. at 78, 755 P.2d at 1376).
¶38 However, upon our first opportunity to squarely construe the meaning of the limiting language in § 61-8-402(4), MCA, we clarified that our contrary statement in Giacomini was mere dicta and held that the still-present limiting language in § 61-8-402(4), MCA, applies only to warrantless post-refusal BAC tests, not DUI-related blood draws independently authorized by search warrant. State v. Minett, 2014 MT 225, ¶¶ 12-17, 376 Mont. 260, 332 P.3d 235. Though the case did not involve a search warrant issued after an implied consent refusal, Minett remains important here because our plain meaning construction of the limiting language of § 61-8-402(4), MCA, did not depend on the presence or absence of an implied consent refusal. See Minett, ¶¶ 12-17. Minett merely recognized what should have been obvious all along—the limiting language of § 61-8-402(4), MCA, expressly applies only to warrantless post-refusal DUI-related seizures of BAC evidence. Consequently, contrary to the longstanding misconception and our now superseded dicta in Giacomini, DUI-related search warrants have always been, and remain, available to law enforcement under the general authority of § 46-5-221, MCA, without any requirement for a prior DUI conviction or implied consent refusal. The only question is whether, in enacting Senate Bill 42, the 2011 Legislature in any way limited the preexisting availability of DUI-related search warrants under the independent authority of § 46-5-221, MCA.
¶39 In a well-intentioned effort to enhance effective enforcement of Montana’s DUI laws by closing a misperceived loophole protecting DUI-related offenders, the 2011 Legislature revised Montana’s implied consent statutes to expressly make post-refusal search warrants *320 available to law enforcement to obtain otherwise unavailable BAC evidence against repeat DUI offenders. Section 61-8-402(5), MCA; 2011 Mont. Laws 1164. The new provision defined a repeat DUI offender as a person who has a prior DUI-related conviction or implied consent refusal under Montana law “or a similar statute in another jurisdiction.” Section § 61-8-402(5), MCA. Given the Legislature’s narrow focus on repeat offenders and the widespread misconception that Montana’s existing implied consent statutes barred law enforcement from obtaining post-refusal DUI-related search warrants, it is not surprising that nothing in the express language, title, or legislative history of Senate Bill 42 evinces any legislative intent to affirmatively limit the preexisting availability of DUI-related search warrants under § 46-5-221, MCA. The new warrant exception, § 61-8-402(5), MCA, and accompanying amendments to §§ 61-8-402(4) and -409(4), MCA, make sense only under the then-prevailing misconception that the preexisting implied consent statutes barred both warrantless and warrant-authorized post-refusal seizures of BAC evidence. Regardless of the Legislature’s clear intent to limit the availability of the new warrant authorization,[7] legislation enacted to partially plug a perceived loophole in DUI enforcement cannot logically be construed as legislative intent to affirmatively limit an independently available, preexisting search warrant authorization the Legislature did not believe existed. Though certainly creating unnecessary ambiguity between statutes, the 2011 revisions to § 61-8-402, MCA, simply did not supersede, limit, or otherwise affect *321 the preexisting availability of DUI-related search warrants under § 46-5-221, MCA. Thus, unrestricted DUI-related search warrants remain available to law enforcement under § 46-5-221, MCA, unaffected by the limiting language in § 61-8-402(5), MCA.
¶40 In the continuing absence of any statutory provision handcuffing law enforcement by clearly and unequivocally limiting the longstanding independent availability of unrestricted DUI-related search warrants under § 46-5-221, MCA, I would hold that, regardless of the inaccurate statement in the warrant application that Williams had a prior out-of-state DUI conviction under a statute similar to §§ 61-8-401 or -406, MCA, the Missoula Police lawfully seized his blood pursuant to a post-refusal search warrant properly issued by the Municipal Court in accordance with the independent authority of § 46-5-221, MCA. I would further respectfully suggest that the Legislature review and clean up this mess at its earliest convenience.

 See Colo. Rev. Stat. § 42-4-1301(1)(a), (f), (g) (DUI, DUI per se, and “driving while ability impaired” to the “slightest degree”).

 The statute setting forth probable cause grounds for search warrants was enacted as part of the Montana Code of Criminal Procedure, and codified as § 95-704, R.C.M. 1947 (1967 Mont. Laws 372), and renumbered as § 46-5-202, MCA. In 1991, the search warrant statute was amended and renumbered to become § 46-5-221, MCA. 1991 Mont. Laws 3030. Telephonic search warrants were similarly available well before 2011. See §§ 46-5-202(3)-(5), MCA (1985) and 46-5-222, MCA (1991).

 Formerly numbered § 32-2142.1, R.C.M. 1947.

 Montana’s supplemental implied consent statute authorizing warrantless preliminary alcohol screening tests (PAST) has always similarly provided that, “if a person refuses to submit to a test under this section, a test will not be given.” Section 61-8-409, MCA; see 1995 Mont. Laws 2081.

 See Hearing on S.B. 42, before the Mont. Sen. Jud. Comm., 62nd Leg. Reg. Sess. 00:43:37-01:23:14 (Jan. 20, 2011) and Hearing on S.B. 42 before the Mont. House Jud. Comm., 62nd Leg. Reg. Sess. 00:58:22-01:25:59 (March 17, 2011).

 Aside from Collins’ manifestly limited scope and farther undermining it as authority aiding in the construction of § 61-8-402, MCA, our reasoning was suspect given that the non-DUI-related “offense” upon which we distinguished application of the implied consent statute was not an “offense” for purposes of the qualified immunity/ scope of employment matter at issue. The non-DUI-related “offense” was merely a suspected violation of an alcohol restriction imposed as a condition of the DUI suspect’s preexisting probation and, thus, beyond the scope of officer’s duty to investigate and enforce absent prior authorization of the suspect’s probation officer. See § 46-1-202(15) and (17), MCA (definitions of an “offense” and “peace officer”).

 Under the misconception that DUI-related search warrants were not then available under existing law, and consistent with the express limiting language in the proposed new section, § 61-8-402(5), MCA, the sponsor of SB 42, Sen. Jim Shockley, explained to the House Judiciary Committee that the new warrant authorization would be available only upon a second or subsequent DUI offense or implied consent refusal, to wit:
[R]ight now, the way that the statutes are written, you cannot get a warrant from a court to draw blood from a suspect who the officer believes is impaired by alcohol or drugs.... What this does provide is a constitutional way for law enforcement to conduct a search to gather evidence against a person believed to have committed a crime.... [But] there’s a mulligan. I don’t golf, but I understand that if you golf and you mess up the first shot ... it doesn’t count. And that’s what this is, a mulligan. This bill does not apply, you can’t get a warrant, unless the person has refused to cooperate with law enforcement before, refused to either blow or give blood, or has a ... previous DUI, or is awaiting trial on DUI. In other words, this is the second mistake.
Hearing on S.B. 42, House Jud. Comm., 62nd Leg. Reg. See... 00:58:58-1:00:37 (March 17, 2011).