No. 01-687

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 351

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

DALE BEANBLOSSOM,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
                In and For the County of Musselshell,
                Honorable David Cybulski, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

        Robert W. Snively, Attorney at Law, Roundup, Montana

        For Respondents:

        Honorable Mike McGrath, Attorney General; Brenda Nordlund,
        Assistant Attorney General, Helena, Montana

        Catherine Truman, County Attorney, Roundup, Montana

Submitted on Briefs:  April 25, 2002

Decided:  December 30, 2002

Filed:

_____
                    Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    The defendant, Dale Beanblossom (Beanblossom), was charged with "Driving under the Influence of Alcohol, Fourth or Subsequent Offense" in violation of §§ 61-8-401 and -731, MCA.  Beanblossom filed a motion to dismiss, alleging that the arresting officer failed to administer a breathalyzer test in violation of § 61-8-402(2), MCA, and in violation of his constitutional right to due process.  The District Court for the County of Musselshell denied Beanblossom's motion, and a jury ultimately convicted him of the felony DUI charge.  Beanblossom appeals the District Court's denial of his motion to dismiss.  We affirm.

## Background

¶2  On March 15, 2001, Musselshell County Deputy Sheriff Jon Goffena, responded to a domestic disturbance call from Beanblossom's wife.  On his way to the Beanblossom residence, Officer Goffena noticed Beanblossom pulling out of a gas station and onto the highway, heading in the direction of his residence.  Goffena followed the vehicle for approximately 100 to 200 yards, during which time he observed the vehicle moving 10 to 15 miles an hour in a 25 mile per hour zone with its right-turn signal blinking.  Officer Goffena decided to pull Beanblossom over before he reached home so that Goffena could investigate the domestic disturbance call and diffuse a potentially hazardous situation.  When Goffena turned on his patrol lights, Beanblossom's vehicle made a "big swerve" as it pulled over on the side of the highway.

2

¶3   As Officer Goffena approached the vehicle, he noticed that Beanblossom was "force-feeding himself corn nuts," and that the distinct odor of alcohol was on his breath.  He asked Beanblossom to get out of his vehicle and directed him to step behind the vehicle.  The investigation beside the patrol car was videotaped.  According to Officer Goffena, Beanblossom acted in a threatening manner.  Several times during the investigation, Beanblossom referred to a fight that had occurred earlier in the day with a woman.  In describing the fight, Beanblossom emphatically swung his arms and demonstrated how the woman allegedly grabbed him, then pulled back and crooked his arm, as if to throw a punch.  Officer Goffena testified that he felt "pretty tense" while he was dealing with Beanblossom  because of "[t]he screaming, the hollering, the look on his face, the actions that were going on" and because Beanblossom "kept crowding [his] space."

¶4   After the initial roadside investigation, Goffena took Beanblossom to the detention center where he read Beanblossom an implied consent advisory.  This interview was also videotaped.  In response to Goffena's question, "Will you take a breath test?" Beanblossom responded, "Yeah."  However, by that point, the officer was "stressed," "completely distracted," not "paying attention to what [he] was reading" and did not administer the breath test even though Beanblossom had consented.  Instead, Goffena marked the implied consent form to indicate that Beanblossom had refused the test.  In fact, Officer Goffena testified that he did not realize

3

that Beanblossom had actually consented to the breath test until the county attorney told him that it was on the video tape.

¶5 Ultimately, Beanblossom was charged with DUI, which if convicted of, would have constituted his fourth DUI offense, a felony. Beanblossom, through counsel, filed a motion to dismiss the charge based on the officer's failure to administer the breath test, which Beanblossom contends would have been exculpating. After a hearing, the District Court denied the motion. Subsequently, a jury found Beanblossom guilty of DUI, and Beanblossom was sentenced to 13 months with the Department of Corrections and four years of probation. Beanblossom appeals the denial of his motion to dismiss. We affirm.

¶6 Beanblossom presents the following issues on appeal:

¶7 1. Whether the District Court erred in not granting Beanblossom's motion to dismiss?

¶8 2. Whether Beanblossom's due process rights were violated when the arresting police officer failed to administer Beanblossom a breath test?

## Discussion

¶9 The grant or denial of a motion to dismiss in a criminal case is a question of law which is reviewed *de novo* on appeal. *State v. Hardaway,* 2001 MT 252, ¶ 64, 307 Mont. 139, ¶ 64, 36 P.3d 900, ¶ 64. This Court's standard of review is plenary, and we determine whether a district court's conclusion is correct. *Hardaway,* ¶ 64.

## Issue 1

4

¶10  Whether the District Court erred in not granting Beanblossom's motion to dismiss?

¶11  Appellant Beanblossom argues that the District Court erred in denying his motion to dismiss because Montana law, specifically § 61-8-402(2), MCA, mandates breath tests in cases where an officer suspects a person of driving under the influence of alcohol. Therefore, Beanblossom maintains that Officer Goffena's failure to administer a breath test violated the statutory mandate of § 61-8-402, MCA. He further asserts that Goffena's failure to administer him a breath test bars the State from prosecuting him for the DUI offense. Because the linchpin of Beanblossom's argument is that § 61-8-402(2), MCA, mandates breath tests in Montana, we first address whether this statute includes such a requirement.

¶12  The resolution of this question involves Montana's implied consent statute, § 61-8-402(1), MCA, which provides that "[a] person who operates or is in actual physical control of a vehicle upon the ways of this state open to the public is considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body." Therefore, a person driving on a Montana highway is presumed to have consented to taking a breath test if an officer has reasonable grounds to believe that the person was under the influence of alcohol. If the driver withdraws his or her consent by refusing to take a breath test, the driver is subject to the immediate seizure

5

of his or her driver's license, as well as possible suspension and revocation of the license.  *See* § 61-8-402, MCA.

¶13  According to Beanblossom, subsection (2) of the implied consent statute  mandates the administration of breath tests.  This subsection provides as follows:

> [Breath] test or tests <u>must</u> be administered at the direction of a peace officer when: (i) the officer has reasonable grounds to believe that the person has been driving or has been in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol . . . .

Section 61-8-402(2), MCA (emphasis added).

¶14  Beanblossom maintains that the word "must" renders the statute mandatory and thus requires a peace officer to administer a breath test when he or she believes that a person has been driving while intoxicated.  Therefore, Beanblossom asserts that Officer Goffena violated § 61-8-402(2), MCA, when he failed to give Beanblossom a breath test and that this violation in turn bars his prosecution of the DUI offense.

¶15  The question of whether § 61-8-402(2), MCA, mandates breath tests is one of first impression for this Court.  This issue, however, has been examined by courts outside of Montana, which have interpreted the mandatory language in similarly written statutes as identifying who may administer breath tests when, and if, a breath test is administered.  In *State v. Entzel* (Wash. 1991), 805 P.2d 228, the Washington State Supreme Court considered whether that state's implied consent statute imposed a mandatory duty on police officers to offer breath tests to all persons accused of driving while under the influence.  The *Entzel* court held that the statute

6

did not impose a mandatory duty on peace officers to offer and administer breath tests to every person accused of driving while intoxicated. *See Entzel*, 805 P.2d at 229-30. The court ruled that the statutory language merely designated who may administer the breath test. *See Entzel*, 805 P.2d at 231. Importantly, the *Entzel* court noted that, "[n]ationally, case law holding that implied consent statutes do not impose a duty on law enforcement to offer breath or blood tests has been remarkably consistent over several decades." *Entzel*, 805 P.2d at 230, n.3 (listing cases).

¶16 We agree with the interpretation of the implied consent statute articulated in *Entzel*. The breath test is merely a means of determining the level of intoxication. The statute does not make a breath test the exclusive means of proving intoxication. It is not, as Beanblossom suggests, a precondition to prosecution for DUI. The officer can, in his or her discretion, rely on other indicia of intoxication. The "must" language of the statute refers to "who" administers the test if, in the officer's discretion, a test is given. "Must" does not refer to "whether" the test has to be administered.

¶17 Therefore, because § 61-8-402(2), MCA, merely mandates who may administer a breath test and does not require the administration of breath tests, we conclude that the District Court did not err in denying Beanblossom's motion to dismiss.

<u>Issue 2</u>

7

¶18  Whether Beanblossom's due process rights were violated when the arresting police officer failed to administer Beanblossom a breath test?

¶19  Next, we turn to Beanblossom's argument that his due process rights were violated by Officer Goffena's failure to administer a breath test, which Beanblossom contends would have been exculpating.  Beanblossom directs this Court to previous decisions where we have ruled that when the alleged crime involves intoxication, the accused has the right to obtain a sobriety test independent of that offered by the arresting officer.  *See* § 61-8-405(2), MCA; *State v. Swanson* (1986), 222 Mont. 357, 722 P.2d 1155.  Undoubtedly, Beanblossom had the right to request and receive an independent blood test.  He did not, however, request a blood test.  A violation of due process rights arises only when an accused has requested, but then is denied, an independent sobriety blood test.

¶20  For the reasons discussed above, we affirm the District Court's denial of Beanblossom's motion to dismiss.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ JIM RICE

Justice Terry N. Trieweiler dissenting.

¶21  I dissent from the majority Opinion.

¶22  The language of § 61-8-402, MCA, is both clear and mandatory.

It provides, in relevant part:

> (1) A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body.

> (2) (a) The test or tests must be administered at the direction of a peace officer when:

> (i) the officer has reasonable grounds to believe that the person has been driving or has been in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol,
> . . . .

¶23  When construing a statute, this Court's role is to simply ascertain and declare what is in terms or in substance contained therein, not to put its own result-oriented spin on otherwise clear language.  *See* § 1-2-101, MCA.  Every child understands the meaning of "must," however, if there's any question, Webster's Ninth New Collegiate Dictionary defines it in part as "b: be required by law, custom, or moral conscience . . . to be obliged to . . . ."

¶24  In the past, we have held that when the state violates other testing requirements related to drivers suspected of driving under the influence of alcohol, the appropriate remedy is dismissal of the charges against the defendant.  *See State v. Minkoff*, 2002 MT 29, ¶ 24, 308 Mont. 248, ¶ 24, 42 P.3d 223, ¶ 24.  In that case, we concluded that the investigating officer frustrated a DUI suspect's right pursuant to 61-8-405(2), MCA, to gather an independent blood

9

sample by warning the suspect that the sample would demonstrate a higher blood alcohol level than did the breath test administered by the investigating officer. If discouraging someone, while not prohibiting that person, from obtaining an independent blood test requires dismissal even though breathalyzer test results are already available, then it makes no sense to me why ignoring the plain and mandatory language requiring a test to measure the amount of alcohol in a person's body would not compel the same result.

¶25 Had the majority chosen to affirm the District Court's finding that Beanblossom frustrated the investigating officer's efforts to administer a breathalyzer or blood test, that would make some sense. However, the majority has ignored that issue. In the process, the majority has also chosen to ignore the plain language of the statute in favor of its own result-oriented approach and has demonstrated a propensity to selectively and randomly enforce those statutes which pertain to the administration of tests to those people who are suspected of driving under the influence of alcohol. The majority does so based on case law from other jurisdictions. However, when a statutory mandate is as clear as the language in § 61-8-402(2), MCA, case law from other jurisdictions is irrelevant and unnecessary.

¶26 The majority suggests in ¶ 16 that, "[T]he 'must' language of the statute refers to 'who' administers the test if, in the officer's discretion, a test is given. 'Must' does not refer to 'whether' the test has to be administered." The majority's strained interpretation deserves high marks for creativity but low

10

marks for consistency, adherence to basic rules of grammar, or a willingness to enforce plain statutory language when doing so leads to an unpleasant result.

¶27  For these reasons, I dissent from the majority Opinion.  I would reverse the judgment of the District Court and order that the charges against Beanblossom be dismissed for failure of the investigating officer to follow the plain language of § 61-8-402(2), MCA.

/S/ TERRY N. TRIEWEILER

11