
DA 13-0422

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 93

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOSEPH GIACOMINI,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2013-0210
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Brad L. Arndorfer; Arndorfer Law Firm; Billings, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Brenda K. Elias, Assistant
Attorney General; Helena, Montana

          Melanie S. Pfeifer, Billings City Attorney's Office; Billings, Montana

Submitted on Briefs:  February 26, 2014

Decided:  April 8, 2014

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Joseph Giacomini (Giacomini) appeals from the order entered by the Thirteenth Judicial District Court, Yellowstone County, affirming the Billings Municipal Court's denial of his motion to suppress evidence obtained by a blood draw following a DUI stop, and denial of his subsequent "Request for Hearing." We affirm, restating Giacomini's issues on appeal as follows:

¶2     *1. Did the District Court err by affirming the Municipal Court's determination that law enforcement properly withdrew Giacomini's blood against his will after obtaining a valid search warrant?*

¶3     *2. Did the District Court err by affirming the Municipal Court's decision to deny Giacomini's "Request for Hearing" as untimely?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On May 9, 2012, at 2:27 a.m., Officer Sean Weston (Officer Weston) of the Billings Police Department observed Giacomini driving westbound on an eastbound, one-way street. After initiating a traffic stop, Officer Weston noticed that Giacomini had watery, blood-shot eyes and smelled of alcohol. Officer Weston engaged him in a series of field sobriety tests, which indicated a likelihood of impairment. When Officer Weston asked Giacomini to provide a preliminary breath sample, he refused. Officer Weston then arrested Giacomini and transported him to the Yellowstone County Detention Facility (YCDF) for further testing.

¶5     At the YCDF, Giacomini again performed poorly on field sobriety tests and again refused to provide a breath sample. A search of his driving records revealed that he had previously refused to provide a breath sample on November 12, 1990. Officer Weston

2

contacted the Honorable Russell C. Fagg (Judge Fagg) via telephone in order to obtain a search warrant authorizing withdrawal of a sample of Giacomini's blood. The following conversation took place under oath:

> [Officer Weston:] Judge, I have probable cause to believe that there is now in the body, blood or bodily fluid of Joseph Giacomini . . . alcohol and, or drugs; that together with the evidence constitutes the crime of Driving Under the Influence of Alcohol or drugs . . . . Mr. Giacomini was observed driving westbound in the twenty seven hundred block of Montana, which is a one way street that travels eastbound. Ahm, the following observations of symptoms and, or impairment were made of Mr. Giacomini by myself. Ahm, he had watery bloodshot eyes. He had a faint odor of a-, ahm, alcoholic beverage on his person. Ahm, he, ahm, was often swaying or staggering and couldn't, had ahm, difficulty keeping his balance. Ahm, throughout the course of the, ahm, S.F.S.T.'s, I observed six out of six possible clues on the H.G.N., four out of eight possible clues on the walk and turn. And, on the one leg stand I observed three clues and indicating impairment. Ahm, he refused a P.B.T. test, as well as an intoxilyzer test. . . . I believe there is an immediate need to obtain this evidence in a timely manner because, based on my training and experience, alcohol and, or drug concentration in the body change and are completely eliminated from the body simply with the passage of time. Therefore, the evidence is perishable in nature and a time delay would render it useless. Based on the preceding facts, I am seeking a Telephonic Search Warrant. This concludes my affidavit, Your Honor. Do I have your permission to sign you[r] name to this affidavit and search warrant and then execute the search warrant?

> [Judge Fagg:] Yes you do. I believe you have, ahm, probable cause to execute the search warrant. So, you may do so.

Pursuant to the warrant, YCDF personnel attempted to draw a blood sample from Giacomini. He became argumentative and had to be placed in a restraint chair. Law enforcement videotaped the entire process. Eventually a blood sample was obtained and sent to the Montana State Crime Lab, where subsequent testing established that Giacomini's blood alcohol content (BAC) was 0.12. Accordingly, the State charged Giacomini with DUI under § 61-8-401(1)(a), MCA.

3

¶6    After an omnibus hearing, Giacomini moved to suppress the results of the blood test, arguing that the act of drawing his blood violated the Montana Constitution and was not supported by probable cause. The Municipal Court orally denied his motion on September 24, 2012, and issued its written Findings of Fact, Conclusions of Law and Order on October 1, 2012. The court determined that law enforcement did not violate Giacomini's constitutional right of privacy and acted pursuant to a valid search warrant. On November 7, 2012, Giacomini filed a motion entitled "Request for Hearing," which asked the Municipal Court to reconsider the suppression issue in light of video evidence showing that YCDF personnel "continually stuck" him with needles. The court denied the motion as untimely. Giacomini then entered a plea of nolo contendere, reserving the suppression issues for appeal.

¶7    Giacomini filed a notice of appeal with the Thirteenth Judicial District Court. After receiving the parties' briefing, the District Court affirmed the Municipal Court's rulings. Giacomini appeals.

## STANDARD OF REVIEW

¶8    When reviewing a Municipal Court's decision, a district court functions as an intermediate appellate court. *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461 (citing §§ 3-5-303, 3-6-110, MCA). In this capacity, a district court is limited to a "review of the record and questions of law." Section 3-6-110(1), MCA. "Our ultimate determination is whether the district court, in its review of the trial court's decision, reached the correct conclusions under the appropriate standards of review." *Stanley v. Lemire*, 2006 MT 304, ¶ 26, 334 Mont. 489, 148 P.3d 643. When evidence

4

gathered pursuant to a search warrant is subject to a motion to suppress, "this Court's function as a reviewing court is to ensure that the court issuing the search warrant had a substantial basis to determine probable cause existed." *State v. St. Marks*, 2002 MT 285, ¶ 12, 312 Mont. 468, 59 P.3d 1113 (citations omitted). A trial court's determination that a motion to suppress is untimely is a conclusion of law that we review for correctness. *State v. Greywater*, 282 Mont. 28, 36, 939 P.2d 975, 980 (1997) (citation omitted). We exercise plenary review over questions of constitutional law. *State v. Daniels*, 2011 MT 278, ¶ 11, 362 Mont. 426, 265 P.3d 623 (citation omitted).

**DISCUSSION**

¶9 *1. Did the District Court err by affirming the Municipal Court's determination that law enforcement properly withdrew Giacomini's blood against his will after obtaining a valid search warrant?*

¶10 Montana's implied consent statute provides, in pertinent part:

(1) A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body.

.   .   .

(4) If an arrested person refuses to submit to one or more tests requested and designated by the officer as provided in subsection (2), the refused test or tests may not be given except as provided in subsection (5) . . . .

(5) *If the arrested person has refused to provide a breath, blood, or urine sample under 61-8-409 or this section in a prior investigation in this state* or under a substantially similar statute in another jurisdiction or the arrested person has a prior conviction or pending offense for a violation of 45-5-104, 45-5-106, 45-5-205, 61-8-401, 61-8-406, or 61-8-411 or a similar statute in another jurisdiction, *the officer may apply for a search warrant to be issued pursuant to 46-5-224 to collect a sample of the person's blood for testing*.

5

Section 61-8-402, MCA (emphasis added). Blood samples drawn in violation of § 61-8-402, MCA, are inadmissible to prove DUI. *State v. Thompson*, 207 Mont. 433, 435, 674 P.2d 1094, 1095 (1984) (citation omitted). Prior to 2011, this statute did not permit law enforcement to apply for a search warrant in DUI cases if an arrested person refused to submit to BAC testing. *See* § 61-8-402, MCA (2009) ("If an arrested person refuses to submit to one or more tests requested and designated by the officer . . . the refused test or tests may not be given . . . ."). A blood sample could be taken pursuant to a search warrant in cases where law enforcement had "probable cause to believe that an offense other than the underlying DUI ha[d] occurred." *Collins v. Dept. of Just., Div. of Hwy. Patrol*, 232 Mont. 73, 78, 755 P.2d 1373, 1376 (1988); *see Thompson*, 207 Mont. at 436-39, 674 P.2d at 1096-97 (holding that evidence obtained from a nonconsensual blood draw was admissible to prove negligent homicide). However, the statutory framework was revised in 2011 by the Legislature's passage of Senate Bill 42. Senate Bill 42 added subsection (5) to § 61-8-402, MCA, quoted above, which authorized law enforcement to apply for a search warrant for a blood draw in cases where an arrested person has previously refused to provide a BAC sample. Laws of Mont., 2011, ch. 283, § 2.

### A. Probable Cause

¶11 Giacomini begins his argument by challenging the search warrant authorizing the blood draw as unsupported by probable cause. Montana law provides for issuance of a search warrant when a law enforcement officer, under oath or affirmation, and in writing or by telephone:

6

(1) states facts sufficient to support probable cause to believe that an offense has been committed;

(2) states facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found;

(3) particularly describes the place, object, or persons to be searched; and

(4) particularly describes who or what is to be seized.

Section 46-5-221, MCA. When evaluating whether probable cause exists to support the issuance of a search warrant, this Court applies the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). *State v. Tucker*, 2008 MT 273, ¶ 16, 345 Mont. 237, 190 P.3d 1080. Under this test, "the issuing judicial officer must make a practical, common sense determination, given all the evidence contained in the application for a search warrant, whether a fair probability exists that contraband or evidence of a crime will be found in a particular place." *Tucker*, ¶ 16 (citations omitted). Probable cause does not require facts sufficient to establish that criminal activity has occurred, only that there exists a probability of criminal activity. *State v. Barnaby*, 2006 MT 203, ¶ 30, 333 Mont. 220, 142 P.3d 809. We pay great deference to a magistrate's determination that probable cause exists to issue a search warrant, and we "draw all reasonable inferences possible to support the issuing magistrate's determination of probable cause." *State v. Cotterell*, 2008 MT 409, ¶ 59, 347 Mont. 231, 198 P.3d 254 (citations omitted).

¶12 Giacomini argues that his prior refusal of a breath test is insufficient to establish probable cause to support a search warrant to draw his blood. Noting the change to § 61-8-402, MCA, in 2011, he argues that "[t]he legislature did not and cannot establish

7

probable cause," but that "judges in the state have taken that to mean that if there has been a prior conviction, or a prior breath test refusal that is probable cause to issue a search warrant." The State responds that Giacomini "appears to conflate the statutory authority granted to law enforcement officer[s] to *apply* for a search warrant with the statutory requirements of a judge to *issue* a search warrant." (Emphasis in original.)

¶13 We agree with the State. The revisions made to § 61-8-402, MCA, by Senate Bill 42 merely removed the statutory prohibition on seeking a search warrant for a blood draw in those cases where the arrested person has previously refused a test.[1] *See* § 61-8-402(5), MCA (2011) (If the arrested person has previously refused to provide a sample, then "the officer *may apply* for a search warrant to be issued pursuant to 46-5-224 to collect a sample of the person's blood for testing.") (emphasis added). An arrested person's prior refusal does not itself establish the necessary probable cause for a warrant, but merely permits police to apply for a warrant, for which they must demonstrate probable cause. Here, there was a substantial basis for Judge Fagg's determination that probable cause existed to authorize a draw of Giacomini's blood. Under oath, Officer Weston informed Judge Fagg that Giacomini: (1) had driven the wrong way down a one way-street, (2) had watery, bloodshot eyes, (3) smelled of alcohol, (4) swayed and staggered, and (5) performed poorly on standard field sobriety tests. Applying the totality of the circumstances test, Judge Fagg had an ample basis to

---

[1] The statute also authorizes officers to apply for a search warrant where the arrested person has previously been charged or convicted of certain specified offenses, but these grounds are not at issue in this case.

believe that a probability existed that criminal activity (DUI) had occurred, and that evidence of the crime would be found in Giacomini's blood.

¶14 Giacomini cites the United States Supreme Court's recent decision in *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552 (2013), which held that the natural dissipation of alcohol from the bloodstream does not constitute a per-se exigent circumstance justifying a warrantless blood draw in a DUI investigation. Giacomini argues that "[i]f dissipation is insufficient for exigent circumstances, it is insufficient for probable cause" and that, here, the warrant was based on "[t]he mere fact of alcohol dissipation." However, the record clearly demonstrates that the probable cause determination was not based solely on alcohol dissipation in Giacomini's blood stream. Officer Weston's mention of potential alcohol dissipation conveyed the time-sensitive nature of the evidence collection process and was no doubt a motivation for seeking a telephonic warrant, but this did not negate the considerable evidence demonstrating probable cause that Giacomini had driven under the influence of alcohol. This case does not involve a warrantless blood draw based upon exigent circumstances.

## B. Right of Privacy

¶15 "The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." Mont. Const. art. II, § 10. A compelling state interest can be found where the State enforces its criminal laws to protect other fundamental rights of its citizens. Even so, "the State may not invade an individual's privacy unless the procedural safeguards attached to the right

9

to be free from unreasonable searches and seizures are met." *State v. Elison*, 2000 MT 288, ¶ 53, 302 Mont. 228, 14 P.3d 456.

¶16 Although Giacomini expressly states he is not challenging the constitutionality of the blood draw provisions of the statute, he argues that "forced blood draws for a DUI without exceptional circumstances such as injuries or potential death from an accident violate the Montana Constitution." This argument appears to challenge the constitutionality of the revisions made by Senate Bill 42 that authorize applications for blood draw search warrants in certain cases not involving injury or death. His argument is premised on this Court's caution that "we will not hesitate to hold that a blood test taken without probable cause or exigent circumstances is unreasonable and an invasion of a person's right to individual privacy." *Collins*, 232 Mont. at 83, 755 P.2d at 1379. However, as noted above, Giacomini's case does not involve a blood test taken without probable cause, so his argument fails.

¶17 Giacomini also argues that "[a]llowing needles to be stuck in people without their permission simply for being suspected of being under the influence is going too far" and violates the right of privacy. He further contends that allowing law enforcement to draw his blood based on "a 22 year old breath test refusal" is unreasonable and "too close to the rack and pinion" to pass constitutional muster. He states that "[t]he central issue is sufficient probable cause to overcome our Right to Privacy."

¶18 Giacomini's arguments do not allege that police exceeded the authority granted by the statute to seek a blood-draw warrant or that police exceeded the scope of the warrant in drawing his blood. Rather, Giacomini appears to be making an as-applied challenge to

the authority granted by the statute as a violation of his right of privacy. As such, these arguments necessarily implicate a constitutional challenge, which Giacomini has not supported with proper briefing or relevant authority. Neither has he addressed our holding in *Collins* that "[w]e do not believe that the taking of a blood sample by trained medical personnel is either harmful or offensive given the present state of medical technology and blood testing techniques. Millions of Americans submit to blood sampling every day without ill effect." 232 Mont. at 80-81, 755 P.2d at 1378. We decline to address these arguments further and they are denied.

¶19 *2. Did the District Court err by affirming the Municipal Court's decision to deny Giacomini's "Request for Hearing" as untimely?*

¶20 Section 46-13-101, MCA, provides in pertinent part:

> (1) Except for good cause shown, any defense, objection, or request that is capable of determination without trial of the general issue must be raised at or before the omnibus hearing unless otherwise provided by Title 46.
>
> (2) Failure of a party to raise defenses or objections or to make requests that must be made prior to trial, at the time set by the court, constitutes a waiver of the defense, objection, or request.
>
> (3) The court, for cause shown, may grant relief from any waiver provided by this section. . . .

Counsel "must be prepared to discuss" motions to suppress at the omnibus hearing. Section 46-13-110(3)(h), MCA. When a trial court denies a defendant's motion to suppress as untimely, this Court has "consistently upheld" that denial. *Greywater*, 282 Mont. at 36, 939 P.2d at 980 (citation omitted).

¶21 In his "Request for Hearing," Giacomini characterized the "numerous attempts" by YCDF personnel to draw his blood as "shocking," and asked the court to review video

11

footage of the process as "additional evidence to support our previously filed Motion to Suppress." The Municipal Court declined, holding that the video should have been presented earlier. The District Court likewise found that Giacomini's "Request for Hearing" was untimely and constituted an attempt to reargue the suppression issue.

¶22 On appeal, Giacomini does not dispute that he filed his "Request for Hearing" on November 8, 2012, over three months after the omnibus hearing on July 17, 2012—the statutory deadline. He maintains that any delay on his part "is understandable" but makes no effort to establish that the video evidence was unavailable earlier or that there was other good cause for the delay that would justify relief from the deadline. Under the plain language of § 46-13-101, MCA, Giacomini's "Request for Hearing" was untimely. The District Court did not err in affirming the Municipal Court's decision to deny Giacomini's motion.

¶23 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER