

DA 13-0164

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2014 MT 225

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

PETER MARCUS MINETT,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DC-11-86
Honorable Kurt Krueger, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

            Wade Zolynski, Chief Appellate Defender, Lisa S. Korchinski,
Assistant Appellate Defender, Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana

            Eileen Joyce, Butte-Silver Bow County Attorney, Michael Clague,
Deputy County Attorney, Butte, Montana


                Submitted on Briefs:  June 25, 2014
                         Decided:  August 19, 2014


Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Peter Minett appeals from his conviction by a jury of the offenses of felony DUI and criminal endangerment. The issue on appeal is whether the District Court properly denied Minett's motion to suppress the results of a blood alcohol test taken pursuant to a search warrant. We affirm.

## BACKGROUND

¶2 On the morning of March 27, 2011, Minett caused an accident by driving his vehicle into another vehicle while attempting to pass on a city street in Butte, Montana. Both Minett and the other driver were injured. Emergency medical service personnel arrived and attended the drivers. At the scene Minett was swearing, upset, waving his hands, and repeating that he was "going to jail." Butte-Silver Bow Police Officer Tymofichuk observed Minett behaving erratically, vacillating from being aggressive to being apologetic. Officer Tymofichuk smelled a strong odor of alcohol when he talked to Minett but was concerned that he might have a head injury.

¶3 Both drivers went to the hospital by ambulance. After investigating the scene of the accident, Officer Tymofichuk went to the hospital to interview the drivers. When he arrived one of the ambulance crew reported that Minett fled on foot when a call came over the radio that officers were coming to the hospital. An officer found Minett a few minutes later at a nearby casino attempting to purchase alcohol and took him to the detention center.

¶4 Officer Tymofichuk suspected that Minett had been driving while impaired by alcohol, based upon his observations at the accident scene. Minett refused to cooperate in any physical sobriety tests, and refused to provide a breath sample. Officer Tymofichuk called the County Attorney for advice and decided to apply for a search warrant to obtain a blood sample from Minett to test for drugs and alcohol. Officer Tymofichuk returned Minett to the hospital because he was complaining of head and neck pain.

¶5 The Justice of the Peace issued a search warrant that authorized the police to obtain a blood sample from Minett based upon probable cause to believe that he was driving under the influence of alcohol. After hospital personnel drew the blood sample, Officer Tymofichuk arrested Minett for driving under the influence, driving without liability insurance and with a suspended license, and for a probation violation.

¶6 The State ultimately charged Minett with felony DUI (fourth or subsequent offense) and with criminal endangerment. In November 2012 a jury found Minett guilty of both offences. The District Court sentenced Minett as a persistent felony offender to concurrent sentences of 30 years with ten years suspended on both convictions. Minett appeals the District Court's denial of his motion to suppress the blood test results.

**STANDARD OF REVIEW**

¶7 This Court reviews a district court ruling on a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether the court's interpretation and application of the law are correct. *State v. Marcial*, 2013 MT 242, ¶ 10, 371 Mont. 348, 308 P.3d 69.

3

¶8 On appeal Minett argues that once he refused to cooperate in sobriety tests, Montana law prohibited law enforcement officers from taking any action to obtain a blood sample for testing.

¶9 Section 61-8-402, MCA (2009), which was in effect at the time of Minett's offense, describes the "implied consent" rule, based in part upon the fact that driving is not a right but a privilege and that a person who chooses to enjoy the privilege must "accept the concomitant responsibilities" such as implied consent. *State v. Michaud,* 2008 MT 88, ¶ 58, 342 Mont. 244, 180 P.3d 636. The implied consent rule provides that a person operating a motor vehicle is "considered to have given consent to a test or tests, as designated by the investigating officer, of the person's blood or breath" to determine the presence of alcohol or drugs. Section 61-8-402(1), MCA (2009). The test or tests "must be administered at the direction of a peace officer," who may designate the tests to be administered. Section 61-8-402(2), MCA (2009). "If an arrested person refuses to submit to one or more tests requested and designated by the officer, . . . the *refused test or tests may not be given* but the officer shall . . . immediately seize the person's driver's license." Section 61-8-402(4), MCA (2009) (emphasis added).

¶10 The implied consent and license seizure provisions of § 61-8-402, MCA (2009), are a civil administrative proceeding "separate and distinct" from a criminal charge of driving under the influence. *Matter of the Suspension of the Driver's License of Blake*, 220 Mont. 27, 31, 712 P.2d 1338, 1341 (1986). The statutory right of a driver to refuse to participate in the tests for alcohol is solely a "matter of grace bestowed by the

Legislature" and is not a matter of due process. *State v. Turbiville*, 2003 MT 340, ¶ 16, 318 Mont. 451, 81 P.3d 475. The right to refuse alcohol testing provided in the statutory implied consent procedure affords a driver greater protection from self-incrimination than that required by the Constitution, but the implied consent statute is not to be considered an exception to the general requirement for a search warrant. *Nichols v. Department of Justice,* 2011 MT 33, ¶¶ 16, 20, 359 Mont. 251, 248 P.3d 813.

¶11   Minett relies upon the language in § 61-8-402(4), MCA (2009), that upon a driver's refusal to take a blood or breath test designated by the officer, the test "may not be given." He contends that because he refused the blood or breath tests requested by the officer, the statute categorically prohibited administration of those tests with or without a search warrant. In *State v. Beanblossom*, 2002 MT 351, ¶¶ 15-17, 313 Mont. 394, 61 P.3d 165 the defendant made a similar argument on appeal—that because he had consented to giving a breath test the officer was required to give the breath test under the terms of the implied consent statute. He asserted that because the test was not given the charges against him should have been dismissed. This Court held that the statutes do not provide the exclusive method of proving intoxication. Administration of blood or breath tests as a matter of implied consent is not "a precondition to prosecution for DUI. The officer can, in his or her discretion, rely on other indicia of intoxication." *Beanblossom*, ¶ 16.

¶12   This Court construes a statute to determine what in terms or substance is contained in it, and not to insert what has been omitted or to omit what has been inserted. Sections 1-2-101 and -102 MCA; *State v. Incashola*, 1998 MT 184, ¶ 11, 289 Mont. 399, 961 P.2d

5

745; *Friends of the Wild Swan v. DNRC*, 2005 MT 351, ¶ 13, 330 Mont. 186, 127 P.3d 394. Applying this rule to § 61-8-402, MCA (2009), that statute prohibits a forced search of a driver's blood after the driver refuses to participate. *State v. Stueck*, 280 Mont. 38, 43, 929 P.2d 829, 833 (1996). However, there is nothing in the statute that prohibits an officer from obtaining a search warrant for blood alcohol testing. The statutory prohibition that the test must not be given after the driver refuses only prohibits forced warrantless collection of a blood sample.

¶13 The dissent correctly notes that we recently stated in another case that under § 61-8-402, MCA (2009), the State was precluded from applying for a search warrant after a person refused a test designated by the officer. *State v. Giacomini*, 2014 MT 93, ¶ 10, 374 Mont. 412, 327 P.3d 1054. That case, however, did not arise under the 2009 version of the statute, and the issues on appeal were whether there was probable cause for the warrant and whether the blood test violated the defendant's right to privacy. The reference in *Giacomini* to the 2009 version of § 61-8-402, MCA, was therefore dicta and is not controlling here.

¶14 When Minett refused to provide a blood sample, Officer Tymofichuk did not pursue implied consent as a means to obtain evidence of a crime, but rather sought and obtained a search warrant. Either method—implied consent under the statute or obtaining a search warrant—can be an effective means to execute a

6

constitutionally-permissible search. A lawful search may proceed after consent or under a warrant.[1]

¶15 Article II, Section 11 of the Montana Constitution provides that the "people shall be secure in their persons, papers, homes, and effects from unreasonable searches and seizures." *State v. $129.970.00*, 2007 MT 148, ¶ 26, 337 Mont. 475, 161 P.3d 816. The primary requirement and procedure for insuring security from unreasonable searches is that they be conducted pursuant to a warrant or pursuant to narrow exceptions to the warrant requirement. *State v. Pipkin*, 1998 MT 143, ¶¶ 11-12, 289 Mont. 240, 961 P.2d 733.

¶16 There is a public policy to encourage the use of warrants. *Pipkin*, ¶ 13. In Montana the law has a strong preference for search warrants and the policy of this state is to "encourage law enforcement officers to seek prior judicial approval before conducting searches and to conduct those searches pursuant to warrant." *State v. West*, 1998 MT 282, ¶¶ 6, 8, 291 Mont. 435, 968 P. 2d 289. Officer Tymofichuk's action in obtaining a warrant for the blood test was not prohibited by the statute and was entirely consistent with Montana law.

¶17 Minett does not contest the validity of the warrant. When the police applied for and obtained a warrant the situation no longer fell under the implied consent statute. This is not an implied consent case and the prohibition of § 61-8-402(4), MCA (2009), does

[1] Other jurisdictions have reached the same conclusion. In *State v. Stone*, 229 W.Va. 271, 728 S.E.2d 155 (2012), the West Virginia Court of Appeals applied a similar implied consent statute under similar facts. The West Virginia Court determined that a blood sample in a DUI case could be obtained by the consent of the suspect, or pursuant to a search warrant if the driver refuses to participate.

not apply. Officer Tymofichuk acted in accordance with the principles of Montana law in obtaining a search warrant for Minett's blood.

¶18 The District Court's denial of Minett's motion to suppress and his convictions are affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE


Justice Patricia Cotter dissents.

¶19 I dissent. I would conclude that the District Court erred in denying Minett's motion to suppress his blood test results.

¶20 Minett's violation occurred on March 27, 2011. As the Court indicates, the 2009 version of the law with respect to blood or breath tests for alcohol was in effect. Opinion, ¶ 9. Section 61-8-402(4), MCA (2009), provided that "[i]f an arrested person refuses to submit to one or more tests requested and designated by the officer as provided in subsection (2), the refused test or tests may not be given, but the officer shall . . . immediately seize the person's driver's license." The 2009 version of the law contained only one exception to this provision. Section 61-8-402(10), MCA (2009), provided: "This section does not apply to blood and breath tests, samples, and analyses used for purposes of medical treatment or care of an injured motorist *or related to a lawful seizure for a suspected violation of an offense not in this part*." (Emphasis added.) Here, as the

8

Court indicates, the search warrant was issued based upon an affidavit of probable cause to believe that Minett was driving under the influence of alcohol. Opinion, ¶ 5. As Title 61, chapter 8, part 4, MCA (2009), specifically addresses "Driving Under Influence of Alcohol or Drugs," the search warrant was thus issued for a suspected violation of an offense contained *in this part*, rendering the subsection (10) exception inapplicable. Notably, § 61-8-402, MCA (2009), contains not a single reference to a search warrant.

¶21 The foregoing statute underwent significant revision in 2011. A provision was added that permitted an officer to apply for a search warrant to collect a sample of a person's blood for testing if the person refused to provide a breath, blood, or urine sample and previously refused the same test in a prior investigation, or has a prior conviction or pending offense for related violations in this or another jurisdiction. *See* § 61-8-402(5), MCA (2013). Moreover, § 61-8-402(11), MCA (2013), now reads as follows: "This section does not apply to tests, samples, and analyses of blood or breath used for purposes of medical treatment or care of an injured motorist, related to a lawful seizure for a suspected violation of an offense not in this part, *or performed pursuant to a search warrant*." (Emphasis added.)

¶22 As noted by Minett on appeal, the 2011 Legislature amended the foregoing statute out of concern that a "loophole" existed under subsection (4) of the statute, precluding the issuance of blood draw search warrants for suspected DUIs, because once tests were refused, "the refused test or tests may not be given." Section 61-8-402(4), MCA (2009); *Hearing on S.B. 42 Before the Mont. Sen. Jud. Comm.*, 62nd Leg., Reg. Sess. 00:43:37-01:22:19 (Jan. 20, 2011); *Hearing on S.B. 42 Before the Mont. House Jud.*

2

*Comm.*, 62nd Leg., Reg. Sess. 00:58:22-01:24:53 (Mar. 17, 2011). "The legislature does not perform useless acts." *Kish v. Mont. State Prison*, 161 Mont. 297, 301, 505 P.2d 891, 893 (1973). Because the 2009 version of § 61-8-402, MCA, contained a categorical statement that any refused tests could not be given—and made no exception for search warrants—the Legislature logically and necessarily closed this loophole in the 2011 statute.

¶23 The Court reasons that there is nothing in the 2009 version of the statute prohibiting an officer from obtaining a search warrant for blood-alcohol testing. I respectfully disagree. The statute provides that if a person has refused to submit to the tests requested by the officer, "the refused test or tests may not be given." Section 61-8-402(4), MCA (2009). There is no exception for a warrant. In fact, we acknowledged this point just a few short months ago in *State v. Giacomini*, 2014 MT 93, 374 Mont. 412, 327 P.3d 1054, in which we stated: "Prior to 2011, this statute did not permit law enforcement to apply for a search warrant in DUI cases if an arrested person refused to submit to BAC testing." *Giacomini*, ¶ 10.

¶24 It is not the province of this Court to insert into a statute language that has been omitted. Section 1-2-101, MCA; *State v. Cooksey*, 2012 MT 226, ¶ 32, 366 Mont. 346, 286 P.3d 1174. Because the 2009 version of the statute categorically precluded the refused tests from being given, without any exception for a search warrant, I would conclude that the District Court erred in denying Minett's motion to suppress. I therefore dissent.

/S/ PATRICIA COTTER

3