FILED

11/17/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0674

DA 16-0674

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 282

CITY OF MISSOULA,

        Plaintiff and Appellee,

  v.

JUSTIN WILLIAMS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DC-16-272
                    Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Martin W. Judnich, Vincent J. Pavlish, Judnich Law Office, Missoula, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Ryan W. Aikin, Assistant Attorney General, Helena, Montana

                Jim Nugent, Missoula City Attorney, Doug Schaller, Deputy City Attorney, Missoula, Montana

                    Submitted on Briefs:  August 9, 2017

                                Decided:  November 17, 2017

Filed:

                              _____
                                      Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Justin Williams (Williams) appeals from an order entered by the Fourth Judicial District Court, Missoula County, affirming the Municipal Court of the City of Missoula's denial of his motion to suppress blood evidence in a DUI proceeding against him. We affirm.

¶2     Williams presents the following issues for our review:

1. *Whether the District Court erred in affirming a telephonic search warrant issued pursuant to § 61-8-402(5), MCA, to draw Williams's blood.*

2. *Whether the District Court erred in failing to consider the merits of Williams's contention that he did not receive the implied consent advisory prior to his blood draw.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On January 24, 2016, at 2:48 a.m., Missoula Police Deputy Jenna Volinkaty (Volinkaty) observed Williams speeding in a rental truck, lose control of the vehicle, collide with a utility pole and tree, and attempt to leave the scene. Using a radar device before the collision, Volinkaty measured Williams traveling between 50 and 55 miles per hour and another officer measured him traveling at 70 miles per hour and accelerating. The speed limit in the area is 30 miles per hour. Volinkaty smelled alcohol on Williams's breath, saw that his eyes were glassy, watery, and bloodshot, his clothing was soiled, that he could not maintain his balance, and heard Williams slur his words. Volinkaty arrested Williams for suspected DUI. Williams admitted he had consumed alcohol, but refused to take an Intoxilyzer breath test. Volinkaty learned that in 2008,

2

Williams was convicted of an alcohol-related driving offense under Arizona Revised Statute § 28-1381.

¶4 Volinkaty contacted Judge Marie Anderson to obtain a telephonic search warrant to draw Williams's blood. In her affidavit, Volinkaty described seeing Williams speeding, travelling 50-55 miles per hour, losing control, and crashing into a utility pole at 2:48 a.m.; Williams being taken into custody after he attempted to flee; observing symptoms of his impairment including watery, bloodshot eyes, slurred speech, staggering movements, soiled clothing, and mood swings. Volinkaty also notified Judge Anderson that "the suspect has a prior conviction for DUI or substantially similar offense on 11/20/2008 in Arizona." Judge Anderson authorized the issuance of the search warrant and Volinkaty executed it by having Williams's blood drawn. Williams had a blood alcohol content (BAC) of 0.197.

¶5 The City of Missoula (the City) charged Williams with aggravated DUI pursuant to § 61-8-465, MCA; reckless driving pursuant to § 61-8-301, MCA; and refusing to submit to a blood or breath test pursuant to § 10.56.020 of the Missoula Municipal Code. Williams filed a motion to suppress the blood draw evidence arguing it was obtained pursuant to a search warrant that relied on a previous conviction from Arizona that "does not qualify as a 'similar' offense under Section 61-8-402(5)." The Municipal Court denied Williams's motion to suppress "conclud[ing] that the Arizona DUI conviction could be considered a 'similar' offense for purposes of seeking a telephonic search warrant." In its order, the Municipal Court recognized, however, that under *State v. McNally*, 2002 MT 160, 310 Mont. 396, 50 P.3d 1080, the Arizona conviction could not

be used to enhance Williams's DUI sentence to a felony. Reserving his right to appeal the adverse determination on his motion to suppress, Williams pleaded no contest to aggravated DUI. The City dismissed the remaining two charges. The Municipal Court sentenced Williams to six months in jail with all but five days suspended and imposed a fine of $1,000.

¶6 Williams appealed the Municipal Court's order denying his motion to suppress to Montana's Fourth Judicial District Court, Missoula County, and made an additional argument that "Officer Volinkaty failed to include in her Affidavit of Probable Cause that she had read to [Williams] the Implied Consent Advisory and therefore information about his refusal is called into question." The District Court affirmed the Municipal Court's order denying Williams's motion to suppress on the same grounds as the Municipal Court, concluding that the Arizona statute is "similar" to Montana's DUI statute "for the purposes of being able to seek a telephonic search warrant under the auspices of Mont. Code Ann. §61-8-402(5)." The District Court declined to address Williams's additional argument "[b]ecause this issue was not previously raised and the municipal court had no opportunity to rule on the issue . . . ."

¶7 Williams appeals.

## STANDARDS OF REVIEW

¶8 On appeal from a municipal court, the district court functions as an intermediate appellate court. Sections 3-5-303, 3-6-110, MCA; *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461. When a district court acts as an intermediate appellate court, "[t]he appeal is confined to review of the record and questions of law,

4

subject to the supreme court's rulemaking and supervisory authority." Section 3-6-110(1), MCA. Our review of the case is as if the appeal was originally filed in this Court and we examine the record independently of the district court's decision. *Stanley v. Lemire*, 2006 MT 304, ¶ 26, 334 Mont. 489, 148 P.3d 643. This Court reviews a ruling on a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether the court's interpretation and application of the law are correct. *State v. Marcial*, 2013 MT 242, ¶ 10, 371 Mont. 348, 308 P.3d 69. Although we will review the municipal court record as if the appeal was originally filed in this Court, our disposition pertains to the order of the district court from which the appeal is taken.

## DISCUSSION

¶9    *1.    Whether the District Court erred in affirming a telephonic search warrant issued pursuant to § 61-8-402(5), MCA, to draw Williams's blood.*

¶10    Williams challenges the legality of the search warrant application that allowed his blood to be drawn. Williams contends on appeal that, under *McNally*, Arizona and Montana's DUI statutes are not "similar" and, without similarity, there was insufficient evidence to authorize a blood draw under § 61-8-402(5), MCA. Therefore, Williams concludes, "the search warrant was illegal and the blood draw results should have been suppressed."

¶11    The City responds that *McNally* is distinguishable because it addressed "similarity" for sentencing purposes only, not for obtaining search warrants pursuant to § 61-8-402(5), MCA. The City also contends, based upon the statutory history of § 61-8-402(5), MCA, that Arizona and Montana's DUI statutes are similar. The City

5

concludes that construing Arizona and Montana's DUI statutes as not similar would frustrate the Legislature's intent when it authorized the drawing of a person's blood pursuant to the provisions of § 61-8-402(5), MCA.

¶12 While we ultimately conclude that *McNally* is not dispositive of the issue before us, some discussion of *McNally* and its progeny are necessary to understand the legal inquiry required in assessing the similarity of another state's statutes with ours and whether such an inquiry is appropriate in deciding if a search warrant should issue. The statute at issue in *McNally* was a sentencing enhancement statute, § 61-8-734(1)(a), MCA, which elevates a DUI offense to a felony if the offender has three or more prior convictions under certain Montana laws or "a similar statute or regulation in another state." *McNally*, ¶ 11 (quoting § 61-8-734(1)(a), MCA). McNally was charged with a fourth or subsequent DUI after having previously received four Driving While Ability Impaired (DWAI) convictions in Colorado. *McNally*, ¶ 3. Because Colorado law provides a DWAI offense and Montana's law does not, McNally argued on appeal that his prior convictions for DWAI "did not constitute previous convictions under a similar statute for the purposes of enhancing Count I to Felony DUI under § 61-8-734, MCA," and he could, therefore, "be sentenced only for a first offense DUI, a misdemeanor." *McNally*, ¶ 3.

¶13 This Court conducted a careful review and comparison of the statutory scheme pertaining to alcohol-related offenses for both Colorado and Montana, which required consideration of the elements and degree of impairment for each state's respective offenses. We agreed with McNally, differentiating between Colorado's scheme of

alcohol-related driving offenses, which provided for three offenses, DUI, DUI per se, and DWAI, and Montana's, which only provided for two, DUI and DUI per se. *McNally*, ¶¶ 7-10. Reasoning that the standard of impairment contained in Colorado's DWAI statute, which required impairment only to the "slightest degree," was lower than the standard of impairment in Montana's DUI statute requiring the driver's ability be "diminished," we determined "McNally's prior convictions in Colorado do not constitute 'conviction[s] for a violation of a similar statute . . . in another state,' as required under § 61-8-734(1)(a), MCA . . . ." *McNally*, ¶¶ 18, 22 (quoting § 61-8-734(1)(a), MCA). "[W]e conclude[d] it was error to enhance McNally's DUI conviction to a felony based on his convictions under Colorado's DWAI statute." *McNally*, ¶ 23. In sum, *McNally* held that Colorado's DWAI statute is not "similar" to Montana's DUI statute within the meaning of § 61-8-734(1)(a), MCA.

¶14 The Montana Legislature has also utilized the language, "similar statute," relative to requirements for obtaining blood or breath tests where probable cause exists to suspect impaired driving. We begin with Montana's statutory presumption of implied consent that "[a] person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body." Section 61-8-402(1), MCA. However, if an arrested person refuses to supply a BAC sample, the "refused test or tests may not be given." Section 61-8-402(4), MCA. Section 61-8-402(5), MCA, carves out an exception to this rule:

7

If the arrested person has refused to provide a breath, blood, or urine sample under 61-8-409 or this section in a prior investigation in this state or under a substantially similar statute in another jurisdiction or the arrested person has a prior conviction or pending offense for a violation of 45-5-104 [negligent homicide], 45-5-106 [vehicular homicide while under the influence], 45-5-205 [negligent vehicular assault], 61-8-401 [DUI], 61-8-406 [DUI per se], or 61-8-411 [operating a vehicle under the influence of THC] or a similar statute in another jurisdiction, the officer may apply for a search warrant to be issued pursuant to 46-5-224 to collect a sample of the person's blood for testing.

¶15 The Legislature added § 61-8-402(5), MCA, in 2011. Prior to its inclusion, the statute "did not permit law enforcement to apply for a search warrant in DUI cases if an arrested person refused to submit to BAC testing." *State v. Giacomini*, 2014 MT 93, ¶ 10, 374 Mont. 412, 327 P.3d 1054. If an arrested person refused to submit to a blood or breath test "the refused test or tests [could] not be given . . . ." Section 61-8-402(4), MCA (2009). A blood sample could only be taken pursuant to a search warrant if probable cause existed that an offense other than the underlying DUI had occurred. *Giacomini*, ¶ 10 (citing *Collins v. Dep't of Justice, Div. of Highway Patrol*, 232 Mont. 73, 78, 755 P.2d 1373, 1376 (1988)). The statutory framework was revised in 2011 by the Legislature's passage of Senate Bill 42, which authorized law enforcement to apply for a search warrant for a blood draw where an arrested person refused to submit to BAC testing and had a prior conviction for any of the listed driving, alcohol-related driving, or drug-related driving offenses "*or a similar statute in another jurisdiction*." The amended bill was explained by a proponent:

The question is: What do you do with these people who have figured out the game? That is—"If I refuse, they don't have the evidence." And you notice that the committee amended the bill for the repeat offenders just for that reason. Because there was a general idea that we shouldn't do it for the

8

first refusal. And what we got here is a bill to try to compel the person that fits the profile of the repeater to give evidence . . . . When you tell them "You either give us a breath test or we go to the judge and get a warrant [for your blood,]" they're going to give you a breath test and that is the object of the exercise.[1]

¶16 This Court addressed a challenge to § 61-8-402(5), MCA, in *Giacomini*. Giacomini refused to submit to a breath test requested during a traffic stop. *Giacomini*, ¶ 4. Because Giacomini had refused to provide a BAC test in the past, law enforcement applied for and received a warrant to draw his blood pursuant to § 61-8-402(5), MCA. *Giacomini*, ¶ 5. On appeal, Giacomini argued that "his prior refusal of a breath test [was] insufficient to establish probable cause to support a search warrant to draw his blood." *Giacomini*, ¶ 12. In response, we noted that "[t]he revisions made to § 61-8-402, MCA, by Senate Bill 42 merely removed the statutory prohibition on seeking a search warrant for a blood draw . . . ." *Giacomini*, ¶ 13. We explained that an arrested person's prior refusal does not by itself establish the necessary probable cause for a warrant, "but merely permits police to apply for a warrant" under § 61-8-402(5), MCA. *Giacomini*, ¶ 13. Aside from his prior refusal, there was a substantial basis to support the judge's determination that probable cause existed in Giacomini's case, including that he had driven the wrong way down a one-way street; had watery, bloodshot eyes; smelled like alcohol; swayed and staggered; and performed poorly on standard field sobriety tests. *Giacomini*, ¶ 13. Section 61-8-402(5), MCA, does not supply probable cause, but allows

---

[1] *Authorize Warrants to Obtain Blood or Breath Test in DUI Cases*, Second Reading of Senate Bill 42, 62nd Leg., at 1:24:30-1:25:23 (2011) (statement of Sen. Larry Jent), *available at* https://perma.cc/D3BN-XH3X.

9

a mechanism to gather evidence against those who have either refused a test in the past or been charged with or convicted of various, but specifically enumerated offenses.

¶17 Here, Williams contends *McNally* is not limited to sentencing and asserts that "[t]here is no meaningful distinction between the sentencing enhancement statute [§ 61-8-734(1), MCA,] and the telephonic search warrant application statute [§ 61-8-402(5), MCA] . . . ." Pointing out that both Arizona and Colorado's DWAI statutes include a threshold level of impairment described as to the "slightest degree," Williams argues that Arizona and Colorado's DWAI statutes are the same and, based on our holding in *McNally*, neither is similar to Montana's DUI statute, which requires a driver's ability to be "diminished." Williams urges us to expand *McNally* and hold that because Montana's DUI statute is not similar to Colorado's DWAI statute, within the meaning of § 61-8-734(1), MCA, Montana's DUI statute is also not similar to Arizona's DWAI statute, within the meaning of § 61-8-402(5), MCA. While it is true that both statutes require convictions for "similar" offenses in order to justify either an enhanced sentence or the taking of a person's blood, significant to resolving the underlying issue are well-established principles for reviewing the sufficiency of a search warrant application, which remain distinguishable from review of predicate convictions for purposes of sentencing and other aspects of the criminal trial. Hence, when reviewing the issuance of a search warrant pursuant to § 61-8-402(5), MCA, it is unnecessary for this Court to determine whether Arizona and Montana have "similar" DUI statutes as we did in *McNally*. Such an inquiry, which is entirely a question of law, is beyond review of the

"facts" set forth within the four corners of the application and otherwise necessary for a determination of probable cause.

¶18     Probable cause is required for a judge to issue a search warrant.

> A judge shall issue a search warrant to a person upon application . . . made under oath or affirmation, that:
> (1)     states facts sufficient to support probable cause to believe that an offense has been committed;
> (2)     states facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found;
> (3)     particularly describes the place, object, or persons to be searched; and
> (4)     particularly describes who or what is to be seized.

Section 46-5-221, MCA. This Court follows the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). *State v. Reesman*, 2000 MT 243, ¶ 24, 301 Mont. 408, 10 P.3d 83; *overruled on other grounds by State v. Barnaby*, 2006 MT 203, ¶ 42, 333 Mont. 220, 142 P.3d 809. Under this test, to determine if a search warrant should be issued, the judge evaluates the facts asserted within the four corners of the warrant application and makes a practical, common sense determination whether there is a fair probability that incriminating items will be found in the place to which entry is sought.[2] *Reesman*, ¶ 24 (citations omitted).

---

[2] Notwithstanding the limitation on the issuing judge to the "four corners" of the application, search warrants must be supported by probable cause—a different standard from preponderance of the evidence applicable to whether a conviction is valid for purposes of sentencing enhancement. *State v. Maine*, 2011 MT 90, ¶ 13, 360 Mont. 182, 255 P.3d 64; *State v. Krebs*, 2016 MT 288, ¶ 12, 385 Mont. 328, 384 P.3d 98. Probable cause, the standard upon which a search warrant may issue, is lower than a preponderance of the evidence, the standard required to establish the existence of prior convictions. Furthermore, probable cause is a less onerous standard than determining whether a prior conviction from a different state was pursuant to a "similar statute" for sentencing enhancement purposes. This Court will review a district court's determinations of similarity to determine if its conclusions of law were correct as a matter of law. Our review under such circumstances is plenary. *McNally*, ¶ 5.

¶19 Williams does not dispute that he was convicted under Arizona Revised Statute § 28-1381 or argue that there were insufficient facts to demonstrate probable cause he was driving while impaired. Nor does Williams dispute the validity of Volinkaty's observations. Williams's entire argument is based upon Volinkaty's inclusion in the affidavit of his prior Arizona conviction, which he maintains is not similar to any statute in Montana. Williams thus presents a challenge to the validity of Volinkaty's affidavit. We adopted the *Franks* procedure for challenging the validity of a warrant affidavit in *State v. Sykes*, 194 Mont. 14, 20, 663 P.2d 691, 695 (1983); *overruled on other grounds by State v. Long*, 216 Mont. 65, 69, 700 P.2d 153, 156 (1985). "[A] warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 165, 98 S. Ct. 2674, 2681 (1978). "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171, 98 S. Ct. at 2684. A "judge or magistrate is required to evaluate only the facts asserted within the four corners of a search warrant application. If inaccurate or misleading information is included in that application, it must be excised from the application regardless of whether that information was included mistakenly, negligently, or intentionally." *State v. Worrall*, 1999 MT 55 ¶ 33, 293 Mont. 439, 976 P.2d 968 (citation omitted); *overruled on other grounds by State v. Kasparek*, 2016 MT 163, ¶ 12, 384 Mont. 56, 375 P.3d 372. "This Court's only function is to ensure that the issuing judicial officer had a substantial basis to determine that probable cause existed" and we pay great deference to a magistrate's determination. *State v. Estes*, 2017 MT 226,

12

¶ 24, 388 Mont. 491, ___ P.3d ___ (citation omitted). "When the issuance of a search warrant is based in part on illegal information, the reviewing court shall excise the illegally obtained information from the application for search warrant and review the remaining information de novo to determine whether probable cause supported the issuance of a search warrant." *Estes*, ¶ 24 (citation omitted). Significantly, § 61-8-402(5), MCA, does not alter how search warrants are to be issued and reviewed.

¶20 Our review, and that of the issuing judge, is constrained to the facts within the four corners of the affidavit and we decline to conduct a legal inquiry into the similarity of Montana's statutes with those of Arizona. At a minimum, such an inquiry would require consideration of information not within the application and beyond the requirements for establishing probable cause. *See Reesman*, ¶ 24; § 46-5-221, MCA. Williams's contention is based on a conclusion of law reached after conducting a legal analysis of the alcohol-related statutory schemes in Arizona, Colorado, and Montana, as well as specific statutory elements. The determination of whether two statutes are "similar" is not informed by facts contained within the affidavit which were observed by the officer in the commission of the alcohol-related offense and any inquiry of statutory similarity for purposes of § 61-8-402(5), MCA, which is beyond the affiant's averment that they are similar, is outside the four corners of the affidavit and unnecessary. Here, Volinkaty represented under oath that Williams had a prior conviction "for a DUI or substantially similar offense on 11/20/2008 in Arizona." Neither Volinkaty nor Judge Anderson is compelled to conduct an exhaustive legal analysis into "similarity" of the statutes in order to meet the requirements of § 61-8-402(5), MCA, for issuance of a search warrant.

¶21 Finally, we would be remiss if we failed to note that conducting such an analysis would place an impractical or impossible burden on police officers and issuing judges prior to applying for or issuing a search warrant. Such a requirement would be time consuming and DUI investigations are time-sensitive by nature because the evidence of the offense metabolizes out of the driver's bloodstream simply by the passage of time. We are also confident that if the Legislature is dissatisfied with our interpretation made here, it will exercise its authority and determine otherwise.

¶22 We conclude that conducting a "similarity" analysis of Arizona and Montana DUI statutes—a question purely of law—would go beyond the four corners of the affidavit. In the absence of inaccurate, misleading, or illegally obtained information, it was unnecessary to excise from the affidavit Volinkaty's representations that Williams had a prior conviction in Arizona for DUI. The District Court did not err in denying Williams's motion to suppress.

¶23 *2. Whether the District Court erred in failing to consider the merits of Williams's contention that he did not receive the implied consent advisory prior to his blood draw.*

¶24 Williams argues generally that the warrant requirements were not met and that the City failed to demonstrate that they were met. Williams more specifically argues that Volinkaty failed to read the implied consent advisory. This failure, Williams argues, is fatal to the search warrant application's validity. Williams also faults the District Court for failing to address this argument. The City responds that Williams failed to raise this issue in the Municipal Court and that issues raised for the first time on appeal are not addressed.

14

¶25 Those who operate a motor vehicle in the state of Montana have impliedly consented to submit to a blood or breath test for the purpose of determining the presence or amount of alcohol or drugs in their body. Section 61-8-402(1), MCA. "[D]ue process requires that the arresting officer inform the accused of his or her right to obtain an independent blood test, regardless of whether the accused consents to the test designated by the officer." *State v. Strand*, 286 Mont. 122, 126, 951 P.2d 552, 554 (1997); *overruled on other grounds by State v. Minkoff*, 2002 MT 29, ¶ 14, 308 Mont. 248, 42 P.3d 223. This advisory, derived from principles of fairness and due process, is called the implied consent advisory.

¶26 "The rule is well established that this Court will not address an issue raised for the first time on appeal. The reason for the rule is that it is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider." *State v. Gomez*, 2007 MT 111, ¶ 21, 337 Mont. 219, 158 P.3d 442 (quotation and citations omitted). When the district court acted as an intermediate appellate court, we review the case as if the appeal was originally filed in this Court, examining the record independently of the district court's decision. *Stanley*, ¶ 26.

¶27 Our review of the record reveals the only issue raised in the Municipal Court was whether "the blood evidence obtained pursuant to the search warrant should be suppressed because [Williams's] previous conviction from Arizona does not qualify as a 'similar' offense under Section 61-8-402(5)." It is clear from the briefing in the Municipal Court, that the parties agreed that the implied consent advisory had been given. Both parties referred to Volinkaty providing an implied consent advisory to

15

Williams prior to his refusing to provide a BAC sample. We conclude that whether Volinkaty supplied the implied consent advisory was not at issue in the Municipal Court and the District Court correctly declined to address the matter. For the same reason, we also decline to address Williams's contention that the search warrant is invalid because Volinkaty failed to give him the implied consent advisory.

## CONCLUSION

¶28 The decision of the District Court affirming the Municipal Court's denial of Williams's motion to suppress is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER

Justice Dirk Sandefur, specially concurring.

¶29 I concur that the City's application for a DUI search warrant stated sufficient probable cause to believe that Williams was driving under the influence of alcohol in violation of § 61-8-401, MCA, and that he waived his assertion of error regarding the implied consent advisory requirement by failing to raise it in Municipal Court. Thus, I concur that the Municipal Court did not err in denying Williams' motion to suppress the blood alcohol content (BAC) evidence obtained by the Missoula Police pursuant to a post-refusal DUI search warrant. However, I disagree that the validity of the Municipal

16

Court's search warrant depends on compliance with § 61-8-402(5), MCA, and that the warrant application complied with the similarity requirement of § 61-8-402(5), MCA. Rather than attempt to shoehorn the warrant into § 61-8-402(5), MCA, I instead would affirm on the alternative basis that, regardless of whether Williams' prior Arizona DUI conviction occurred under a legal standard of liability similar to §§ 61-8-401 and -406, MCA, the Municipal Court lawfully issued the search warrant on probable cause of DUI as independently authorized by § 46-5-221, MCA (general authorization for issuance of search warrants on probable cause of criminal activity).

¶30 Standing impassably in the path of affirming the Municipal Court's search warrant under § 61-8-402(5), MCA, is the express statutory requirement that Williams must have had a prior Arizona DUI conviction under a legal standard of liability "similar" to §§ 61-8-401 and -406, MCA (Montana DUI and DUI *per se*). *See* § 61-8-402(5), MCA. Unlike the Colorado statutes at issue in *McNally,* which had three different classes of DUI offenses,[1] Montana and Arizona have only two base DUI offenses—DUI and DUI *per se*. *See* §§ 61-8-401(1)(a), (3), and -406(1)(a), MCA; Ariz. Rev. Stat. § 28-1381(A)(1) and (2). While Arizona and Montana similarly define DUI *per se*, *see* § 61-8-406(1)(a), MCA (driving or being in actual physical control of a noncommercial vehicle with BAC of 0.08 or more), and Ariz. Rev. Stat. § 28-1381(A)(2) (driving or being in actual physical control of a vehicle with an "alcohol concentration of 0.08 or more"), Arizona defines alcohol-based DUI more broadly than § 61-8-401(1)(a) and (3),

---

[1] *See* Colo. Rev. Stat. § 42-4-1301(1)(a), (f), (g) (DUI, DUI *per se*, and "driving while ability impaired" to the "slightest degree").

MCA (driving or being in actual physical control of a vehicle when person's "ability to safely operate a vehicle has been diminished" by alcohol intake). *Compare* Ariz. Rev. Stat. § 28-1381(A)(1) (driving or being "in actual physical control of a vehicle . . . [w]hile under the influence of an intoxicating liquor . . . if the person is impaired to the slightest degree"). *See also State v. Miller*, 245 P.3d 454, ¶ 7 (Ariz. App. 2011) (construing Arizona DUI definition). The Arizona "impaired to the slightest degree" standard requires proof of a lesser degree of impairment than § 61-8-401, MCA (diminished "ability to safely operate a vehicle"). A person who commits the offense of DUI under Arizona law does not necessarily commit the offense of DUI under § 61-8-401, MCA. Consequently, the State inaccurately represented in the search warrant application that Williams had a prior DUI conviction under a standard of criminal liability "similar" to §§ 61-8-401 and -406, MCA.

¶31    As recognized by the Court, the mechanism for judicial review of the sufficiency of a search warrant application is our constitutionally-mandated *Worrall* standard of review requiring excise of inaccurate or misleading factual statements set forth in the original search warrant application and then reassessment of whether what remains is sufficient to establish probable cause for issuance of the warrant. *Worrall*, ¶¶ 32-33 (adopting Montana constitutional standard more stringent than federal *Franks* standard). If what remains in original application is not sufficient to establish the necessary probable cause, the reviewing court must void the warrant and suppress the fruits of the search. *Worrall*, ¶¶ 32-33.

18

¶32   If, as the Court implies, the validity of the Municipal Court's search warrant depends on § 61-8-402(5), MCA, I would extend and similarly apply our *Worrall* standard not only to the constitutionally-required probable cause review of search warrant applications but also to review of the accuracy of the statutorily-required assertion in a search warrant application under § 61-8-402(5), MCA, that the suspect had a prior DUI conviction under a standard of criminal liability similar to §§ 61-8-401 and -406, MCA. Under *Worrall*, lower court findings of fact would continue to be subject to a clearly erroneous standard of review, but the related question arising under § 61-8-402(5), MCA, of whether a statute from another jurisdiction imposes a standard of criminal liability "similar" to §§ 61-8-401 and -406, MCA, would be a pure question of law necessarily subject to de novo review for correctness. Here, straightforward application of our *Worrall* standard would result in the unavoidable conclusion that the search warrant application inaccurately represented that Williams had a prior Arizona DUI conviction under a standard of legal liability similar to §§ 61-8-401 and -406, MCA. The required excision of that inaccurate information would then require invalidation of the warrant and suppression of the resulting BAC evidence due to non-compliance with the express similarity requirement of § 61-8-402(5), MCA.

¶33   The Court's analysis avoids application of our *Worrall* standard, and with it any meaningful review of the State's compliance with § 61-8-402(5), MCA. The Court correctly begins with the proposition that judicial review of the sufficiency of a search warrant application is limited to review of the information within the four corners of the application. But the analysis goes awry when it asserts that application of our *Worrall*

standard to the similarity requirement of § 61-8-402(5), MCA, would improperly call for a conclusion of law dependent on extrinsic legal analysis beyond the four corners of the search warrant application. The Court's reasoning overlooks the fact that *Worrall* allows, if not necessarily requires, consideration of extrinsic information as a basis to assess the truth and accuracy of the information set forth within the four corners of the application. Regardless of whether the predicate information involves a matter of fact or matter of law, the critical focus of our *Worrall* standard of review is whether the predicate information alleged by the State as the legal justification for issuance of a search warrant is true and accurate. The purported "impractical or impossible" time-consuming "burden on police officers and issuing judges," *of verifying the accuracy of a sworn representation in a search warrant application*, has no bearing whatsoever on the critical question of whether the court issued the warrant based on accurate information required by law.

¶34 Neither the obvious public policy importance of effective DUI investigation and prosecution, nor the practical inconvenience of requiring law enforcement to comply with a legal requirement imposed by the Legislature, have any proper place in the construction of the clear and unambiguous similarity requirement of § 61-8-402(5), MCA. If, as the Court implies, the validity of DUI-related search warrants necessarily depends on compliance with § 61-8-402(5), MCA, the sky will not fall and cripple DUI investigations if the State has to provide accurate information to comply with the statutory similarity requirement. Montana law enforcement officers have, or should have, 24/7 legal support from state and local prosecutors as needed. As Montana's chief law

20

enforcement officer, the Attorney General certainly has the resources and expertise to support law enforcement and local prosecutors by surveying and publishing the various comparative standards of DUI-related liability in other jurisdictions. Finally, any law enforcement problem caused by compliance with § 61-8-402(5), MCA, is the sole responsibility of the Legislature, not this Court. Accordingly, I respectfully disagree with the Court's stated rationale for upholding the validity of the search warrant in this case.

¶35 Proper resolution of this case merely requires recognition of the independent availability of unrestricted DUI-related search warrants under § 46-5-221, MCA. Prior to 2011, Montana law did not specifically provide for DUI-related search warrants. The two primary legal means available to law enforcement to obtain DUI-related BAC evidence were:

(1)     voluntary consent of the person to the implied consent request of a law enforcement officer for a preliminary breath test in the field on reasonable suspicion of a DUI-related offense, § 61-8-409(4), MCA, and/or a more precise breath or blood test following the person's arrest on probable cause of a DUI-related offense, § 61-8-402(4), MCA; and

(2)     involuntary seizure and scientific analysis (search) of a person's blood upon a search warrant issued pursuant to § 46-5-221, MCA, on probable cause of criminal activity, whether DUI or non-DUI-related, and the presence of particularly described related evidence or contraband at or in a particularly described location.

As to the latter, unrestricted search warrants have always been available to law enforcement "on probable cause to believe that *an offense* has been committed" and that "evidence . . . connected with the offense may be found." Section 46-5-221, MCA

21

(emphasis added).[2]  As defined by §§ 61-8-401 and -406, MCA, DUI and DUI *per se* are "offenses" as referenced in § 46-5-221, MCA.  *See* § 46-1-202(15), MCA (definition of "offense").  Even before the 2011 Legislature expressly clarified the matter in § 46-5-224(1), MCA (specifically including detectable BAC in preexisting authorization for seizure of "evidence" by warrant), measurable BAC has always been "evidence connected with" DUI-related offenses for purposes of § 46-5-221, MCA.  *See* §§ 26-1-101(2), 46-5-224(1), and 61-8-404(1)(a), MCA.  Fifty years ago, the 1967 Legislature broadly crafted § 46-5-224, MCA, to "set out *as expansively as possible* the items which may be seized under a search warrant."  *State v. Quigg*, 155 Mont. 119, 129, 467 P.2d 692, 697-98 (1970) (quoting Criminal Law Commission Comments) (emphasis added); 1967 Mont. Laws 372.

¶36  In various forms since original enactment in 1971, Montana's primary implied consent statute has allowed DUI suspects to refuse to submit to warrantless implied consent BAC tests subject only to temporary loss of driving privileges upon refusal.  *See* § 61-8-402(4), MCA.  From 1971 through 1995, § 61-8-402, MCA[3] provided that, if an arrested person "refuses . . . to submit" to a warrantless implied consent test, "none shall be given."  Section 61-8-402(3), MCA (1995); 1971 Mont. Laws 640.  From 1997 to

---

[2] The statute setting forth probable cause grounds for search warrants was enacted as part of the Montana Code of Criminal Procedure, and codified as § 95-704, R.C.M. 1947 (1967 Mont. Laws 372), and renumbered as § 46-5-202, MCA.  In 1991, the search warrant statute was amended and renumbered to become § 46-5-221, MCA.  1991 Mont. Laws 3030.  Telephonic search warrants were similarly available well before 2011.  *See* §§ 46-5-202(3)-(5), MCA (1985) and 46-5-222, MCA (1991).

[3] Formerly numbered § 32-2142.1, R.C.M. 1947.

date, § 61-8-402, MCA, has similarly provided that, if a person "refuses . . . to submit" to a warrantless implied consent test, "*the refused test . . . may not be given*." Section 61-8-402(4), MCA; 1997 Mont. Laws 492.[4] This clear and unequivocally plain limiting language in Montana's implied consent statutes has always applied only to the *warrantless* post-refusal BAC tests authorized by the statutes. The plain language of Montana's implied consent statutes has never barred or otherwise limited warrant-authorized seizures and searches of DUI-related blood samples under the independent authority of § 46-5-221, MCA.

¶37    Nonetheless, despite clear and unequivocal statutory language to the contrary, widespread misconception has long existed that the limiting language of §§ 61-8-402(4) and -409(4), MCA, not only barred warrantless post-refusal DUI-related seizures of BAC evidence but also warrant-authorized DUI-related seizures.[5] The long-standing misconception stems from a too cursory and undiscerning analysis of our decision in *Collins v. Montana Dept. of Justice*, 232 Mont. 73, 755 P.2d 1373 (1988). In the anomalous context of a civil assault and battery action against an investigating Montana Highway Patrol officer and the State, we considered whether the limiting language § 61-8-402(3), MCA (1983), barred post-refusal, warrant-authorized blood seizures as the lynchpin for determining whether the officer and the State had qualified immunity from

---

[4] Montana's supplemental implied consent statute authorizing warrantless preliminary alcohol screening tests (PAST) has always similarly provided that, "if a person refuses to submit to a test under this section, a test will not be given." Section 61-8-409, MCA; *see* 1995 Mont. Laws 2081.

[5] *See Hearing on S.B. 42, before the Mont. Sen. Jud. Comm., 62nd Leg. Reg. Sess.* 00:43:37-01:23:14 (Jan. 20, 2011) and *Hearing on S.B. 42 before the Mont. House Jud. Comm., 62nd Leg. Reg. Sess.* 00:58:22-01:25:59 (March 17, 2011).

the plaintiff's civil assault and battery claims. *Collins*, 232 Mont. at 77-78, 755 P.2d at 1375-76. Whether the limiting language in § 61-8-402(3), MCA (1983), barred post-refusal, warrant-authorized, DUI-related seizure of BAC evidence was not squarely at issue. Rather, *based on the State's concession*, we assumed, without analysis, that § 61-8-402(3), MCA (1983), barred post-refusal DUI-related search warrants. Based on that uncontested assumption, we merely held that the district court erroneously denied qualified immunity to the officer and State because the limiting language in the implied consent statute in any event did not bar warrant-authorized post-refusal blood seizures *based on non-DUI-related offenses*. *Collins*, 232 Mont. at 77-78, 755 P.2d at 1375-76.[6] In 2014, we perpetuated the misconception by cursorily stating, without analysis, that the limiting language in the pre-2011 implied consent statute "did not permit law enforcement to apply for a search warrant in DUI cases if an arrested person refused to submit to BAC testing." *Giacomini*, ¶¶ 10-11 (citing *Collins*, 232 Mont. at 78, 755 P.2d at 1376).

¶38 However, upon our first opportunity to squarely construe the meaning of the limiting language in § 61-8-402(4), MCA, we clarified that our contrary statement in *Giacomini* was mere dicta and held that the still-present limiting language in § 61-8-402(4), MCA, applies only to *warrantless* post-refusal BAC tests, not DUI-related

___

[6] Aside from *Collins'* manifestly limited scope and further undermining it as authority aiding in the construction of § 61-8-402, MCA, our reasoning was suspect given that the non-DUI-related "offense" upon which we distinguished application of the implied consent statute was not an "offense" for purposes of the qualified immunity/scope of employment matter at issue. The non-DUI-related "offense" was merely a suspected violation of an alcohol restriction imposed as a condition of the DUI suspect's preexisting probation and, thus, beyond the scope of officer's duty to investigate and enforce absent prior authorization of the suspect's probation officer. *See* § 46-1-202(15) and (17), MCA (definitions of an "offense" and "peace officer").

24

blood draws independently authorized by search warrant. *State v. Minett*, 2014 MT 225, ¶¶ 12-17, 376 Mont. 260, 332 P.3d 235. Though the case did not involve a search warrant issued after an implied consent refusal, *Minett* remains important here because our plain meaning construction of the limiting language of § 61-8-402(4), MCA, did not depend on the presence or absence of an implied consent refusal. *See Minett*, ¶¶ 12-17. *Minett* merely recognized what should have been obvious all along—the limiting language of § 61-8-402(4), MCA, expressly applies only to warrantless post-refusal DUI-related seizures of BAC evidence. Consequently, contrary to the longstanding misconception and our now superseded dicta in *Giacomini*, DUI-related search warrants have always been, and remain, available to law enforcement under the general authority of § 46-5-221, MCA, without any requirement for a prior DUI conviction or implied consent refusal. The only question is whether, in enacting Senate Bill 42, the 2011 Legislature in any way limited the preexisting availability of DUI-related search warrants under the independent authority of § 46-5-221, MCA.

¶39 In a well-intentioned effort to enhance effective enforcement of Montana's DUI laws by closing a *misperceived loophole protecting DUI-related offenders*, the 2011 Legislature revised Montana's implied consent statutes to expressly make post-refusal search warrants available to law enforcement to obtain otherwise unavailable BAC evidence against repeat DUI offenders. Section 61-8-402(5), MCA; 2011 Mont. Laws 1164. The new provision defined a repeat DUI offender as a person who has a prior DUI-related conviction or implied consent refusal under Montana law "or a similar statute in another jurisdiction." Section § 61-8-402(5), MCA. Given the Legislature's

25

narrow focus on repeat offenders and the widespread misconception that Montana's existing implied consent statutes barred law enforcement from obtaining post-refusal DUI-related search warrants, it is not surprising that nothing in the express language, title, or legislative history of Senate Bill 42 evinces any legislative intent to affirmatively limit the *preexisting* availability of DUI-related search warrants under § 46-5-221, MCA. The new warrant exception, § 61-8-402(5), MCA, and accompanying amendments to §§ 61-8-402(4) and -409(4), MCA, make sense only under the then-prevailing misconception that the preexisting implied consent statutes barred both warrantless *and* warrant-authorized post-refusal seizures of BAC evidence. Regardless of the Legislature's clear intent to limit the availability of the *new warrant* authorization,[7] legislation enacted to partially plug a perceived loophole in DUI enforcement cannot logically be construed as legislative intent to affirmatively limit an independently available, preexisting search warrant authorization the Legislature did not believe existed.

---

[7] Under the misconception that DUI-related search warrants were not then available under existing law, and consistent with the express limiting language in the proposed new section, § 61-8-402(5), MCA, the sponsor of SB 42, Sen. Jim Shockley, explained to the House Judiciary Committee that the *new warrant* authorization would be available only upon a second or subsequent DUI offense or implied consent refusal, to wit:

> [R]ight now, the way that the statutes are written, you cannot get a warrant from a court to draw blood from a suspect who the officer believes is impaired by alcohol or drugs. . . . What this does provide is a constitutional way for law enforcement to conduct a search to gather evidence against a person believed to have committed a crime. . . . [But] there's a mulligan. I don't golf, but I understand that if you golf and you mess up the first shot . . . it doesn't count. And that's what this is, a mulligan. This bill does not apply, you can't get a warrant, unless the person has refused to cooperate with law enforcement before, refused to either blow or give blood, or has a . . . previous DUI, or is awaiting trial on DUI. In other words, this is the second mistake.

*Hearing on S.B. 42, House Jud. Comm., 62nd Leg. Reg. Sess.* 00:58:58-1:00:37 (March 17, 2011).

Though certainly creating unnecessary ambiguity between statutes, the 2011 revisions to § 61-8-402, MCA, simply did not supersede, limit, or otherwise affect the preexisting availability of DUI-related search warrants under § 46-5-221, MCA. Thus, unrestricted DUI-related search warrants remain available to law enforcement under § 46-5-221, MCA, unaffected by the limiting language in § 61-8-402(5), MCA.

¶40 In the continuing absence of any statutory provision handcuffing law enforcement by clearly and unequivocally limiting the long-standing independent availability of unrestricted DUI-related search warrants under § 46-5-221, MCA, I would hold that, regardless of the inaccurate statement in the warrant application that Williams had a prior out-of-state DUI conviction under a statute similar to §§ 61-8-401 or -406, MCA, the Missoula Police lawfully seized his blood pursuant to a post-refusal search warrant properly issued by the Municipal Court in accordance with the independent authority of § 46-5-221, MCA. I would further respectfully suggest that the Legislature review and clean up this mess at its earliest convenience.

/S/ DIRK M. SANDEFUR